STATE of Tennessee, Appellee,

v.

Sam PILKEY, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Aug. 7, 1989.
Rehearing Denied Sept. 11, 1989.

Charles Burson, Atty. Gen. and Reporter, Kathy M. Principe, C. Anthony Daughtrey, Asst. Attys. Gen., Nashville, for appellee.

Glenna M. Ramer, Chattanooga, for appellant.

William C. Talman, Tennessee Ass'n of Criminal Defense Lawyers, Knoxville, amicus curiae.

Paul J. Morrow, Jr., Tennessee Ass'n of Criminal Defense Lawyers, Amicus Committee, Nashville, amicus curiae.

## OPINION

HARBISON, Justice.

This case involves aspects of comprehensive state statutes dealing with child abuse and sexual molestation. The primary issue concerns the state's use at trial as substan-

tive evidence an *ex parte* videotaped statement taken from a victim of alleged sexual abuse under thirteen years of age. We are of the opinion that the use of such *ex parte* unsworn statements in the manner permitted in the trial of the present case violates the right of a criminal defendant to confront the witnesses against him or her, under the provisions of both the federal and state constitutions.

The evidence against the accused in the present case, however, wholly apart from the videotaped statement of the child witness, was so strong and convincing that, in our opinion, the use of the questioned testimony did not affect the result. In our opinion the admission of this evidence, although error, was harmless beyond a reasonable doubt. T.R.A.P. 36(b); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Accordingly the conviction of the accused for aggravated rape and the sentence imposed are affirmed, even though our interpretation of the statutory provisions differs from that made by the trial judge and the Court of Criminal Appeals.

### A. *The Facts*

Appellant was twenty-one years of age at the time of the trial of this case in September 1986. He was about twenty years of age at the time of the offense for which he was indicted, the allegations of the indictment charging that the offense occurred between January and September 1985.

Appellant had no criminal record as an adult. There was evidence that he was a slow learner and had been placed in special educational classes during his boyhood. He had been tested on several occasions at mental health facilities and was found to be near or slightly below average in intelligence. There is evidence that he had exhibited homosexual tendencies, including posing as a transvestite. At the time of the alleged offense he was living at home with his parents and was employed as a caretaker at a cemetery where his father also worked. His father died prior to the trial of the case.

Appellant was the uncle of the alleged victim, who was about five years old at the time the offense allegedly occurred. The child's father was the brother of appellant, but was divorced from the mother of the child. The child apparently visited in his grandmother's home, where appellant resided, and there is evidence from which a trier of fact could conclude beyond a reasonable doubt that appellant sexually abused the boy on more than one occasion.

Indeed, after the present charges were brought, appellant signed a detailed confession in which he admitted to two separate sexual offenses against the child. There is no issue on appeal concerning the admissibility of this confession. If accepted by the jury, as it apparently was, the confession itself, which is amply corroborated by other evidence in the record, afforded a sufficient basis upon which the conviction could be sustained. Appellant attempted to repudiate the confession at trial, but his explanation that he thought the document involved some other transaction and his testimony that the police officers mistreated or abused him could certainly have been treated as very unconvincing by a trial jury. The case appears to be one of genuine child abuse falling within the statutory definition of aggravated rape. T.C.A. § 39-2-603(a)(4).

There is no question on appeal as to the sufficiency of the evidence. The offense occurred at the home where appellant and the grandmother of the child lived, while the child was visiting there. After the return of the child from a weekend visit at his grandmother's home in October 1985, the victim's mother noticed some symptoms which alarmed her and caused her to question the child. After receiving information from him, she called the matter to the attention of personnel in the Department of Human Services as well as to other family members. The present charges resulted from the subsequent investigation by state and local authorities.

Ms. Sandy Pratt, a child protective services worker with the Department of Human Services, interviewed the victim's mother on October 21, 1985. She then took

the child with her to a conference room where she videotaped an interview with the child. Only she and a detective from the sheriff's department were present, in addition to the operator of the video equipment. That tape, however, was distorted as a result of fluorescent lighting in the room. Following further investigation into the offense, Ms. Pratt had a second videotaped interview with the child on November 21, 1985. It was this interview which was later exhibited to the jury at the trial. There were no serious discrepancies in the statements of the child in the two interviews, although the second did touch upon a few subjects not mentioned in the first interview. The picture and sound quality of the second interview are much clearer than those in the first.

The child was not called as a witness at trial by either party. The second videotaped interview was played before the jury on a television monitor. Ms. Pratt, the interviewer, was present at trial and did testify as a witness.

In a written pre-trial motion, counsel for appellant sought to suppress the videotape. That motion, however, has not been included in the record on appeal. There was some discussion of that motion and other pre-trial motions on the morning when the trial began, and a hearing regarding the taped interview was held out of the presence of the jury. The colloquy between the trial judge and counsel which occurred on the morning of the trial indicates that there was no objection made on behalf of appellant with respect to the technical statutory requirements concerning videotaped statements, such as the qualifications of the operator, leading of the witness, pre-trial availability of the tape to counsel and the like. *See* T.C.A. § 24–7–116(c)(1)(A) through (H).

As far as can be gleaned from the colloquy between the trial judge and counsel, the primary objection made by appellant to the use of the videotape was based upon counsel's interpretation of certain statutory provisions regarding videotaped statements, which will be discussed later. The statutes under which the evidence was ad-

mitted may have become effective after the alleged date of the offense, and part of the objection made by counsel for appellant was that the statutes could not be deemed to be "retroactive." The trial, however, occurred well after the effective date of the statutes and we find no merit to the suggestion by appellant that the statutes were applied in such a way as to constitute ex post facto laws in any constitutional sense. *Davis v. Beeler*, 185 Tenn. 638, 207 S.W.2d 343, 349 (1947); *Miller v. State*, 584 S.W.2d 758, 761 (Tenn.1979).

The constitutional issue of violation of the right of confrontation was sufficiently raised in the pre-trial colloquy, however, and was sufficiently preserved in the motion for a new trial that it was not deemed waived by the Court of Criminal Appeals. As previously stated, it is one of the principal issues urged here, and, although the case presents far from an ideal vehicle, we have deemed the issue sufficiently raised to warrant consideration. The issue is a recurring one, and it is of great importance to trial judges, prosecutors and defense counsel.

### B. *The Applicable Statutes*

In 1985 Tennessee Public Acts chapter 478 the General Assembly enacted a lengthy statute dealing with the detection and prosecution of offenses involving the molestation and abuse of children. The statute has been codified in a number of different titles. Those most pertinent to the present case are codified in titles thirty-seven and twenty-four.

The Court of Criminal Appeals correctly noted:

The Child Sexual Abuse Act was enacted by the legislature because of the tremendous impact on victimized children, their siblings, family structure and the citizens of the State due to increased incidents of child sexual abuse. The purpose of the Act is to protect children whose physical or mental health and welfare are adversely affected by sexual abuse with the intent that a comprehensive approach for the detection, intervention, preven-

tion and treatment of child sexual abuse be developed for the State.

The statute requires personnel in many different agencies, medical, legal and social, to report incidents of suspected child abuse, and it reflects an intent to create a massive program for the prevention or alleviation of a problem which the General Assembly, like legislatures of most of the American states, has found to be most serious and pressing. This Court recognizes the importance of the problem and of the State's legitimate interest in attempting to deal with it. Nothing in this opinion should be construed to the contrary, and our only concern is to seek to ascertain the legislative intent and then to determine whether or to what extent there may be an impermissible infringement upon the constitutional rights of persons accused of criminal offenses.

The statute provides for the use of many different agencies or instrumentalities in the investigation of alleged instances of child abuse. *Ex parte* videotaping of an interview with a child victim is expressly authorized by portions of the statute, now codified as T.C.A. § 37–1–405(b)(2), T.C.A. § 37–1–406(g) and T.C.A. § 37–1–609(c). These tapes are to be made available to investigative agencies for various purposes, and their use as substantive evidence at the trial is only a secondary purpose. T.C.A. § 37–1–405(b)(2) states in part:

> Whenever there are multiple investigations, the department, the district attorney, law enforcement, and where applicable, the child protection team shall coordinate their investigations to the maximum extent possible so that interviews with the victimized child shall be kept to an absolute minimum. Reference to the audio or videotape or tapes made by the child protection team or department should be utilized whenever possible to avoid additional questioning of the child.

In T.C.A. § 37–1–609 there are provisions for the taking of photographs and the examining of child victims. Subsection (c) of that provision authorizes videotape recordings "when a justifiable suspicion of sexual abuse exists." The statute provides in part:

> The video recording shall be taken for the purpose of indicating the child's physical or mental condition at the time the report is investigated and shall be made available for future reference and for utilization as provided in Acts 1985, ch. 478.

It is important to note at this point that these *ex parte* videotape interviews were obviously not designed to take the place of depositions in criminal cases as authorized by Rule 15, T.R.Crim.P.[1] Like any other pre-trial statements taken from witnesses, such recordings may have many incidental uses at trial, such as for purposes of impeachment, contradiction, demonstration of bias, fear or prejudice. In and of themselves, however, they are not primarily designed to be evidence in chief or to take the place of sworn testimony in formal criminal trials.

Nevertheless, a portion of the 1985 statute, now codified as T.C.A. § 24–7–116, does deal with audio-visually recorded testimony in civil and criminal cases. Subsection (b) of that code section provides that such videotaped statements shall be admissible at any preliminary hearing when relevant, provided the court finds sufficient indicia of reliability and further provided that the conditions under which the recording was made meet the requirements of subsection (c). The present case, of course, does not involve a preliminary hearing, so that the provisions of subsection (b) are not involved here.

Also not involved in the present case are the provisions of subsections (d), (e) and (f). Under the terms of (d), the trial court may

---

1. Rule 15(a), T.R.Crim.P. provides:

 Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book paper, document, record, recording, or other material not privileged, be produced at the same time and place....

order the testimony of a child taken outside the courtroom and its recording for showing in the courtroom before the court and jury. There was no such order in the present case, and there is nothing in the present record to indicate that the trial judge made any particularized finding that the child victim was unable to attend trial or that his attendance at trial would be traumatic or stressful. The provisions of subsection (d) do not differ greatly from the provisions of Rule 15, T.R.Crim.P., authorizing either the State or the defendant in a criminal case to take depositions under court order and for good cause shown. Under the statute or under the procedural rule the accused and his attorney are entitled to be present. There is no suggestion of screening of the witness or any other limitations upon the confrontational right of the accused in either the statute or the rule, and this Court has previously held that the Rules of Criminal Procedure authorize the State, as well as the accused, to take depositions for use in evidence at trial under appropriate circumstances. *See State v. Simon,* 635 S.W.2d 498 (Tenn.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

Subsection (e) of the statute in question permits the trial court to order the further taking of testimony of a child outside the courtroom for recording and showing before the court and jury if circumstances permit, and subsection (f) provides that the child should not be required to testify in court if the provisions of (d) or (e) have been invoked, unless the court so orders.

As previously stated, none of those subsections have been invoked and none are involved in this case. The *ex parte,* unsworn statement of the child was sought to be introduced by the State under the provisions of subsection (c), T.C.A. § 24–7–116.

The provisions of that subsection purport to make recorded statements of the child admissible in evidence under a number of stated circumstances listed (A) through (I). There seems to be no question but that the videotape in the present case comported with provisions (A) through (H), and it is not necessary here to reproduce those provisions. In summary they require that at a videotape recording no attorney be present, the recording be both visual and oral, proper equipment be used and a competent operator employed and that the recording be accurate and unaltered. They also require that the statement not be made in response to calculated leading questions, that every voice on the recording be identified, that the person conducting the interview of the child in the recording be present and available to testify at trial and that the accused or his or her attorney be afforded a reasonable opportunity to listen to and view the statement before it is offered into evidence. Further, subdivision (H) requires that the trial judge hold a hearing outside the presence of the jury and affirmatively find that the time, content, and circumstances of the case provided sufficient indicia of reliability. That was done in this case.

As stated, all of those requirements appear to have been met in the present case, or, at least, no issue has been made concerning them on this appeal. Subdivision (I)(i) of subsection (c)(1) then provides for the use of these videotapes when the testimony of the child is taken under court order under subsections (d) or (e) as previously described. The court, however, must determine prior to the taking of such testimony that the tape is admissible and order that the accused be permitted to cross-examine the child during the recording of testimony. The provisions of this subdivision are not involved in the present case.

Subdivision (I)(ii) is the portion of the statute under which the State sought to have the videotaped recording introduced in the present case. Its language is difficult. Read with the preamble, it provides that the videotaped statement is admissible into evidence if subdivisions (A) through (H) are complied with and if:

> With respect to criminal prosecutions in which the testimony of the child is not taken under subsections (d) or (e), or if so taken, is not shown at the trial, or the child is nonetheless ordered to testify in court under subsection (e), either party is allowed to call the child as a witness and

the opposing party is allowed to cross-examine the child.

The testimony of the child in the present case was not taken under subsections (d) or (e), nor was the child ordered to testify in court by the trial judge. Accordingly this appears to be a prosecution under which the videotape would be admissible if

[e]ither party is allowed to call the child as a witness and the opposing party is allowed to cross-examine the child.

Counsel for appellant has insisted that the provisions of subsection (c) do not make an *ex parte* videotaped interview of a child victim admissible at a trial, and that such tapes may be used only at preliminary hearings, at least as substantive evidence. Both the State and the trial judge have construed the statute as permitting the use of such tapes at the trial itself, however, and in our opinion that is the apparent meaning of subdivision (ii) of T.C.A. § 24–7–116(c)(1)(I).

Under this construction the *ex parte* videotaped interview would be admissible, as substantive evidence, during the state's case-in-chief where "either party is allowed to call the child as a witness" and where "the opposing party" is allowed to "cross-examine" the child.

If the State had called the child in this case as a witness, the appellant would have been entitled to "cross-examine" the child. Otherwise, apparently the statute contemplates that the accused may call the child for direct examination and that the State may cross-examine the child victim. At least as utilized in this case, the effect is that the State may produce evidence in chief by an unsworn witness, and the accused is then forced to call the child, if desired, as a witness for direct examination.

The trial judge and the State in the present case have construed the statute as authorizing the defendant to call the child in order to conduct cross-examination. This construction is contrary to the plain language of T.C.A. § 24–7–116(c)(1)(I)(ii).

There are distinct differences between direct and cross-examination. Under the statute as literally worded, the defendant would be required to call his chief accuser to the stand as the defendant's witness and to proceed with the direct examination. Allowing for leniency in direct examination and leading for immature witnesses, nevertheless the defendant, under present evidentiary rules in this State, would be required to "vouch" for the witness if forced to call the child as a defense witness. *King v. State,* 187 Tenn. 431, 215 S.W.2d 813 (1948); *Sanders v. McNatt,* 58 Tenn. App. 385, 430 S.W.2d 797 (1968); *see generally* Paine, *Tennessee Law of Evidence* § 217.

It might be possible, of course, to construe the statute as permitting the defendant to "cross-examine" even though the State had not called the child as a live witness at trial, although, again, that is not the literal wording of the statute.[2] As it is actually phrased, the statute would permit the State to use the unsworn videotaped statement of the child as evidence in chief, the defendant would then have to call the child as his or her witness and the State would be allowed, in effect, to cross-examine its own witness.

This, to say the least, is a drastic departure from ordinary trial procedure. The new Tennessee Rules of Evidence, which have been adopted by this Court and approved by the General Assembly, will become effective on January 1, 1990. They abolish the "voucher" rule and permit either party to impeach a witness no matter by whom called. T.R.E. 607. That was not the situation at the time the statute under consideration was enacted, nor was it the

---

**2.** In order to avoid confrontation problems, this Court has construed a statute as permitting the defendant to call a witness as upon cross-examination, and to treat the witness as a state's witness. *See State v. Hughes,* 713 S.W.2d 58 (Tenn.1986). The witness in that case, however, was not the chief accuser of the defendant, but was only an expert who was required to interpret or testify regarding laboratory test results. Even if the present statute were construed as permitting cross-examination of the child by the defendant without calling the child as a defense witness, serious confrontational issues remain.

situation at the time the present case was tried.

Insofar as we can tell from the present record, or at least according to the briefs of the parties, the child victim in the present case was present at trial and was available at all times for either party to call him as a witness. Neither party did so, nor did the court call the child as a court's witness, as might be done under some circumstances. *See Montesi v. State*, 220 Tenn. 354, 417 S.W.2d 554 (1967).

There does not seem to be any doubt that either party would have been allowed to call the child as a witness if desired, so that the pre-trial, unsworn, *ex parte* hearsay statement of the child was admissible under the statutory subdivision in question if that provision may validly be applied.

## C. *The Confrontation Issue*

The Sixth Amendment to the Constitution of the United States guarantees to the accused the right, among others, "to be confronted with the witnesses against him."

Article I, section 9 of the Tennessee Constitution is somewhat more specific. It guarantees the accused the right "to meet the witnesses face to face."

Both constitutional provisions have been the subject of extensive judicial interpretation. One of the most recent decisions from the Supreme Court of the United States construing the federal constitution is *Coy v. Iowa*, 487 U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The opinion in that case was released more than three months after the opinion of the Court of Criminal Appeals in the present case.

While the statutory provisions considered there were somewhat different, it is our conclusion that if the statutory procedures involved in *Coy* did not meet federal constitutional guarantees, then those in the present case likewise do not.

The *Coy* case involved child sexual abuse. In that case the child testified at trial but under a lighting arrangement which permitted the accused to see and hear the witness but prevented the witness from actually seeing the accused. Six members of the United States Supreme Court held that the federal confrontation clause guaranteed the accused the right to a literal face-to-face confrontation with the witness who testified against him at trial, at least in the absence of a specific showing of need to dispense with that aspect of confrontation or in the absence of an established exception to the hearsay rule. *See* 487 U.S. at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 868 (O'Connor, J., concurring).

In cases of real necessity, the guarantee of the right of confrontation can be required to yield, as in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Further the *Coy* decision seems to have left open the question of whether a "necessity" exception exists to the accused's right to confront the alleged child victim.[3] In the present case, however, there has been no judicial determination whatever that the child witness would be in any way traumatized or stressed by appearing in court, nor has any other particularized need been suggested for use by the State of the prior *ex parte* statement of the witness. In similar circumstances the Texas Court of Criminal Appeals recently held

**3.** Justice O'Connor in her concurring opinion stated:

Thus, I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. [citations omitted.] The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court

makes a case-specific finding of necessity, as is required by a number of state statutes, see, *e.g.*, Cal.Penal Code Ann. § 1347(d)(1) (West Supp.1988); Fla.Stat. § 92.54(4) (1987); Mass. Gen.Laws § 278:16D(b)(1) (1986); N.J.Stat. Ann. § 2A:84A–32.4(b) (Supp.1988), our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses. Because nothing in the Court's opinion conflicts with this approach and this conclusion, I join it.
487 U.S. at ——, 108 S.Ct. at 2805, 101 L.Ed.2d at 869–70 (O'Connor concurring).

unconstitutional a statutory provision in that state authorizing a pre-trial videotaped interview of a child victim. *See Long v. State,* 742 S.W.2d 302 (Tex.Crim.App.1987), *cert. denied* — U.S. ——, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988).

In the case of *California v. Green, supra,* the United States Supreme Court had held that previous sworn testimony of a witness, given at a preliminary hearing, could be admitted as substantive evidence at trial if the witness subsequently became unavailable. The decision in that respect is similar to that of this Court in the case of *State v. Causby,* 706 S.W.2d 628 (Tenn. 1986). The exception for former sworn testimony is not applicable in the present case, nor was it applicable in *Coy, supra.*

In the case of *State v. Bastien,* 129 Ill.2d 64, 133 Ill.Dec. 459, 541 N.E.2d 670 (1989), the Supreme Court of Illinois held unconstitutional statutory provisions permitting the admission in evidence of an oral statement or testimony of a child sexual abuse victim if recorded on videotape where the defendant was denied the right of contemporaneous cross-examination. One condition of admissibility was that the child be "available" to testify at trial. The Illinois Supreme Court held that the statute violated both federal and state constitutional guarantees of the right of confrontation.

In its analysis of the Illinois statutory procedure the *Bastien* court addressed the provision which allowed "cross-examination" of the victim at trial. In its discussion of this provision the court addressed the *Green* decision:

The crucial difference, however, between the out-of-court statement in *Green* and the out-of-court videotaped statement in the case at bar is that in *Green* the statement was a prior inconsistent statement. It is clear that the nature of the statement at issue was critical to the Court. In a passage most pertinent to the case at bar, the Court stated:

"The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness' '[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth.' *State v. Saporen,* 205 Minn. 358, 362, 285 N.W. 898, 901 (1939). That danger, however, disappears when the witness has changed his testimony so that, far from 'hardening,' his prior statement has softened to the point where he now repudiates it." 399 U.S. at 159, 90 S.Ct. at 1935–36, 26 L.Ed.2d at 497–98.

The danger identified by the Supreme Court is precisely the danger presented by the delayed cross-examination authorized by the challenged statute. It is quite possible that the videotaping and the trial will take place months apart. During that time, the child undoubtedly will have contact with the prosecutor and relatives who, consciously or unconsciously, may influence the child. We are convinced that the statute, by prohibiting contemporaneous cross-examination, unnecessarily and impermissibly infringes on an accused's right of confrontation.

133 Ill.Dec. at 464–65, 541 N.E.2d at 675.

In the case of *State v. Henderson,* 554 S.W.2d 117 (Tenn.1977), this Court discussed in detail the federal cases dealing with the guarantee of the right of confrontation, and concluded that if the federal constitution was violated, the Tennessee Constitution was also violated. In addition, we have already noted that the Tennessee Constitution expressly uses the words "face to face", and any deviation from the literal meaning of that term generally must be grounded in a well established exception in the law of evidence or in a compelling state interest.[4] While we have recognized

---

**4.** Since we find that T.C.A. § 24–7–116(c)(1)(I)(ii), as used herein, violates the appellant's rights under the Sixth Amendment to the United States Constitution, and,

thus, Article I, section 9 of the Tennessee Constitution, *see State v. Henderson, supra,* we need not address whether our constitutional right to

that child abuse cases represent important interests of the State, nevertheless in our opinion something more than the mere availability of a child witness for cross-examination is required before the *ex parte* unsworn statement or affidavit of such a witness could be admitted in evidence as substantive proof in chief against an accused criminal defendant. We have already noted that such statements might have other uses, such as prior inconsistent statements, proof of the actual condition of the child at the time the tape was taken or the like. Ordinarily, however, they should not be introduced for the truth of the complaint asserted, unless taken by way of deposition under Rule 15, T.R.Crim.P. or on court order pursuant to T.C.A. § 24-7-116(d) or (e), supported by particularized findings of necessity, unless the defendant agrees or waives the issue. We therefore find that the use of the videotaped statement in the present case was error and that T.C.A. § 24-7-116(c)(1)(I)(ii) is unconstitutional as utilized in this case.

We do not see any constitutional problem in the incidental use of a videotaped interview in the same manner as any other pre-trial ex parte statement. To go further, however, and permit a videotape procured outside the defendant's presence to be used as evidence in chief by the prosecution, in our opinion impermissibly infringes upon the confrontation rights of the accused.[5] One of the purposes of the 1985 legislation was to minimize the repeated interrogation of a child and, probably, to minimize the trauma of a child's having to attend court and testify as a witness. There are alternative procedures in the statutes for taking the child's testimony in a manner similar to a deposition, with the defendant and his attorney present and cross-examining at the time. *See* T.C.A. § 24-7-116(d) and (e). When either party attempts to use a bare videotape made under subsection (c) of the statute, however, the child can be required to be

present as a witness in court, so that the attempt to shield the child from that experience is, to say the least, only partially accomplished by the statute.

In summary, therefore, we hold that the attempt to use the videotape in the manner shown in this case violates the confrontation rights of the accused, and insofar as the statute purports to authorize such use, it is unconstitutional. The *ex parte* recorded interview of a child may be treated like any other piece of evidence, such as a photograph or a written statement, and utilized in evidence by the State only to such degree as the established rules of evidence permit.

We recognize that the General Assembly may create exceptions to the hearsay rule or other rules of evidence, but it may not do so in such a way as to infringe unnecessarily upon the constitutionally guaranteed right of the accused to confront witnesses in a criminal prosecution.

In the recent case of *State v. Suttles*, 767 S.W.2d 403 (Tenn.1989) this Court held that a trial judge could not privately talk with a child witness in the absence of the defendant or his attorney and then report to the jury the court's findings. Neither, in our opinion, could the trial judge videotape his private interview with a child complainant and play the tape before the jury. As stated in that case:

We realize that child abuse cases are sensitive and difficult, but they are criminal trials and must be conducted accordingly.

767 S.W.2d at 407.

*D. Qualification of a Child Witness*

Prior to the 1985 legislation involved in this case, T.C.A. § 24-1-101 provided that every person of sufficient capacity to understand the obligation of an oath was competent to be a witness. The 1985 legislation added two additional sentences, however, as follows:

---

a "face-to-face" confrontation provides greater protection than the federal constitution.

**5.** The statute apparently would permit the defendant also to use the tape if desired without

calling the child as a witness. That situation, of course, would involve waiver of the confrontation issue, and the statute would simply create another hearsay exception whose validity is not involved here.

Provided, however, where the witness being qualified is a child under the age of thirteen (13) and his or her testimony will be concerning a sexual offense allegedly committed against such child, such child is competent to be a witness. Before testifying, such witness shall be required to declare that he or she will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his or her mind with his or her duty to do so.

During the course of the trial of the present case counsel for appellant objected to the use of the videotaped statement of the child because no oath had been administered. As previously stated, however, the child was not actually called as a witness to testify by either side, nor was the child's testimony taken pre-trial pursuant to court order. In either of those events, of course, the trial judge would have had to determine the competency of the child and would have had to use some form of oath or affirmation. No particular ritual or form is prescribed by the statute, but the trial judge must be satisfied that the child understands his or her duty to testify truthfully.

 In the present case the trial judge indicated that he had concluded that there were sufficient "indicia of reliability" within the purview of T.C.A. § 24–7–116(c)(1)(H). Necessarily this must involve some determination by the trial judge that the child was sufficiently mature to have credibility and to understand what was being asked of him. Further, failure to administer an oath to a witness is a matter which can be waived or which can amount to harmless error under various circumstances. *See Hewlett v. State*, 517 S.W.2d 760, 767 (Tenn.Crim.App.1974), *cert. denied* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975).

 The State insists that the issue was waived in the present case, but we find no merit to that insistence. The objection for failure of the trial judge to administer an oath is not the kind of suppression motion required to be made prior to trial under Rule 12(b), Tennessee Rules of Criminal Procedure. Indeed in many cases such a motion could not be made pre-trial, unless the trial judge had ordered the testimony of the child to be taken under other provisions of the statute here in question and a sufficient oath had not been administered. The mere fact that the objection of counsel was made after the witness had testified does not constitute a waiver.

We feel it important to mention this matter, because in some cases it has been indicated that failure of counsel to make a contemporaneous objection to evidence automatically constitutes a waiver. *See, e.g., State v. Glebock*, 616 S.W.2d 897, 903 (Tenn.Crim.App.1981). This is true only if counsel also fails to make a timely motion to strike.

 A motion to strike testimony from the record is one form of objection. It may be made after evidence has already been introduced and the movant seeks to have that evidence stricken from the record or from consideration by the jury. It is a well established trial procedure, and that is all that occurred in the present case. The evidentiary record was still open when counsel's objection was made, and a motion to strike may properly be made at any time prior to the formal closing of the evidentiary record and the final resting of the case by all parties.

This practice is firmly rooted in Tennessee trial procedure. In a leading criminal case, *Moon v. State*, 146 Tenn. 319, 368, 242 S.W. 39, 53 (1922) the court said:

> Objection to this testimony by Dr. Drake was not interposed until after he had answered the question, when counsel for the defendant asked the court to withdraw the evidence from the jury.
>
> It is contended by the state that the motion to have the evidence withdrawn came too late.
>
> To this we cannot assent. It is well settled by our decisions that a party adversely affected by the introduction of incompetent testimony may move to have same excluded any time before the jury retires to consider its verdict, provided, of course, he has not waived his right to have it withdrawn.

*See also Lee v. Lee,* 719 S.W.2d 295, 296–97 (Tenn.App.1986); *Paine,* Tennessee Law of Evidence § 183 (1974); *Pivnick,* Tennessee Circuit Court Practice § 24–14 (2d ed. 1986).

Nothing in either the rules of civil or criminal procedure was ever intended to eliminate the trial motion to strike evidence from the record or to withdraw it from consideration by a jury. Sometimes it can serve as a late objection or a renewed objection, or it can serve to strike evidence which had previously been conditionally admitted when the condition has not later been met. The motion is expressly retained and recognized in the new rules of evidence, T.R.E. 103(a), as follows:

> Effect of erroneous ruling—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and
>
> (1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context …

Although counsel did not characterize her objection in the present case as a motion to strike, it had the same effect, and the issue was not waived simply because the motion was made after the evidence had been introduced.

We find no merit to the objection in the present case, and the trial judge properly overruled it because the child was never called as a witness for the purpose of giving evidence in the first place, and his competency, at least impliedly, had previously been determined by the trial judge.

The judgment of the trial court is affirmed at the cost of appellant. The cause will be remanded to that court for any further proceedings which may be necessary.

DROWOTA, C.J., FONES and COOPER, JJ., and CANTRELL, Special Justice.

## ORDER

A petition for rehearing has been filed on behalf of appellant. After consideration of the same, the Court is of the opinion that the petition is not well taken, and it is accordingly denied at the cost of appellant.