900 P.2d 135

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**William APILANDO, Sr.,
Defendant–Appellant.**

**No. 17402.**

Supreme Court of Hawai'i.

July 13, 1995.

As Amended Aug. 31, 1995.

Deborah L. Kim, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Caroline M. Mee, Deputy Pros. Atty., on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant William Apilando, Sr. appeals his conviction and sentence for sexual assault in the third degree following a jury trial. On appeal, Apilando primarily alleges a violation of his constitutional right of confrontation and to due process, stemming from videotaped testimony by the complainant presented at trial in lieu of direct examination. Apilando also contends that he was denied a fair trial because of prosecutorial misconduct.

Because we hold that the presentation of the videotape evidence in lieu of direct testimony violated Apilando's right of confrontation, the trial court's judgment and sentence is vacated, and the case is remanded for a new trial.

## I. BACKGROUND

During a family gathering in August 1990, Apilando and his five-year-old grandniece, the complainant in this case, were part of a group playing hide-and-seek in the countryside near Maunawili Falls, in the City and County of Honolulu. While Apilando and the complainant were hiding in the bushes, Apilando allegedly pushed the complainant to the ground, pulled down his pants' zipper, laid on top of the complainant, tried to kiss her, rubbed her "down [t]here" (indicating the genital area) with his hand by reaching under her skirt and under the leg of her panties, and pinched the complainant in her vaginal area. The complainant managed to escape and ran back to her mother's room at their nearby house, where her mother found her crying, shaking, and huddling in the corner of the bed, holding onto and biting a pillow. The complainant was later taken to Kapiolani Medical Center (KMC), where she underwent a physical and pelvic examination at KMC's Sex Abuse Treatment Center.

The complainant's mother filed a report with police officer Anson Kimura, who had been sent to KMC by the Honolulu Police Department (HPD) dispatch. The case was assigned to Lieutenant Barry Bright, a detective with the Child Sex Crimes Unit of the HPD. Two days after the alleged incident, Detective Bright conducted an interview with the complainant, which was videotaped at the State's Children Advocacy Center. No attorneys were present at the videotaping session.

On February 13, 1991, Apilando was indicted for Sexual Assault in the Third Degree, in violation of Hawai'i Revised Statutes (HRS) § 707–732(1)(b) (Supp.1991),[1] and for Kidnapping, in violation of HRS § 707–720(1)(d) (Supp.1991).[2] At trial in July 1992, the complainant, who was then seven years old, testified as to the events surrounding the alleged offense. Following her testimony on direct and cross examination, the prosecution moved to present the videotaped interview. The trial court denied the motion on the grounds that such evidence would be cumulative and prejudicial because the complainant had already testified.

Apilando was found not guilty on the kidnapping charge; however, because the jury could not reach a verdict on the issue of

---

1. HRS § 707–732(1)(b) provides in pertinent part that "[a] person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old[.]"

2. HRS § 707–720(1)(d) provides in pertinent part that "[a] person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to ... [i]nflict bodily injury upon that person or subject that person to a sexual offense[.]"

sexual assault, the trial court declared a mistrial.

Prior to his second trial in June 1993, Apilando filed a motion in limine to exclude the videotaped interview of the complainant. Relying on Hawai'i Rules of Evidence (HRE) Rules 616 (1985)[3] and 802.1(4) (1985),[4] the trial court denied Apilando's motion and entered findings of facts and conclusions of law, wherein the trial court stated:

1. Since the [prosecution] will be offering the videotape prior to the [complainant] testifying, at the request of defense, the prior ruling by Honorable I. Norman Lewis which disallowed the tape because the [complainant] had already testified is not binding upon this court as law of the case.

2. Rule 616, *H.R.E.*, provides for the admission of televised testimony of a child who is a victim of a sexual offense.

3. Lapse of memory and inability to fully confront the child victim is an important consideration, however, such an argument is irreconcilable with the provisions of Rule 802.1(4), *H.R.E.*, which in addition to Rule 616, *H.R.E.*, allows for hearsay when it qualifies as past recollection recorded.

4. Rule 616, *H.R.E.*, does not require the court to make a finding that the child victim was traumatized or in any other way affected by testifying, prior to allowing the televised testimony in evidence.

5. The [prosecution] will be allowed to play the videotape of the [complainant], subject to proper foundation being met under Rule 616, H.R.E., and proper redaction of portions of the tape which are prejudicial. In addition, the defense will be afforded the opportunity to submit an instruction to the jury regarding their decision to call the [complainant] as a witness.

During the second trial on the sexual assault charge, the redacted version of the videotaped interview was presented during Detective Bright's testimony. Subsequently, in the absence of the jury, the complainant was called to the witness box and underwent *voir dire* examination. During *voir dire,* the complainant testified that she could not remember what she had told Detective Bright during the interview, although she remembered being in the interview room. In response to defense counsel's question whether she had seen the videotape "at least once before," she stated, "I forgot."

While the complainant remained in the witness box, the jury returned to the courtroom, and the complainant underwent cross-examination by Apilando and "re-direct" ex-

---

**3.** Under HRE 616(b), the introduction of videotaped statements of a child victim of sexual assault is permitted, provided that the following safeguards are met:

1. No attorney of either party was present when the statement was made;
2. The recording is both visual and aural and recorded on film or videotape or by other electronic means;
3. The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and unaltered;
4. The statement was not made in response to questioning calculated to lead the child to make a particular statement;
5. Every voice on the recording and every person present at the interview is identified;
6. The person conducting the interview of the child in the recording is present at the proceeding and available to testify for or be cross-examined by either party and every other person present at the interview is available to testify;
7. The defendant or the attorney for the defendant is afforded discovery of the recording before it is offered into evidence; and

8. The child is present to testify.

Additionally, subsection (c) provided that "[i]f the electronic recording of the statement of a child is admitted into evidence under this section, either party may call the child to testify, and the opposing party may cross-examine the child." We also note that HRE 616 was revised and became effective on June 10, 1993, two days after Apilando was found guilty. *See* Act 198, 1993 Haw.Sess.Laws at 301, discussed *infra.*

**4.** HRE 802.1(4) provides:

Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

amination by the prosecution. The complainant essentially testified that: (1) she remembered testifying about the incident at the first trial, including her statement that Apilando had taken off all of her clothing by the stream; (2) Apilando had pushed her down by the stream; (3) she did not remember what Apilando did after he pushed her down, but remembered that he touched her, did not want to say where he touched her, and characterized the touching as "bad"; (4) she pushed Apilando off her and told her mother what had happened; and (5) she did not remember being pinched or feeling sore.

Apilando was found guilty of sexual assault in the third degree and sentenced to a five year term of probation with a special condition of six months incarceration. This timely appeal followed.

## II. DISCUSSION

In the present case, the complainant's videotaped interview was presented to the jury pursuant to HRE 616(b), which permits the introduction of videotaped statements of child-victims in sexual assault cases, provided, inter alia, the child is present to testify on cross-examination. See supra note 3. Apilando essentially contends that the presentation of the videotaped interview in lieu of the complainant's direct testimony violated his constitutional rights of confrontation and to due process, as guaranteed by the Hawai'i Constitution. Because we agree that Apilando's right of confrontation was violated, we need not address his due process argument.

### A. The Confrontation Clause

The confrontation clause of the Hawai'i Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused[.]" Haw. Const. art. I, § 14. The confrontation clause in the sixth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, is virtually identical.

"The right of confrontation affords the accused *both* the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *State v. Ortiz*, 74 Haw. 343, 360, 845 P.2d 547, 555, *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993) (emphasis added) (citation omitted). " 'The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him [or her], and the right to conduct cross-examination.' " *Coy v. Iowa*, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987)). The Clause confers " 'a right to meet face to face all those who appear and give evidence at trial.' " *Coy*, 487 U.S. at 1016, 108 S.Ct. at 2800 (quoting *California v. Green*, 399 U.S. 149, 175, 90 S.Ct. 1930, 1943–44, 26 L.Ed.2d 489 (1970)).

■ Although there is a " 'societal interest in accurate factfinding, which may require consideration of out-of-court statements[,]' " *State v. McGriff*, 76 Hawai'i 148, 156, 871 P.2d 782, 790 (1994) (quoting *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987)), the use of such statements is limited to a great extent by the general rule against the admission of hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE 801(3) (1985). Generally, because hearsay is not subject to the same safeguards as are present during in-court testimony before a factfinder, "[h]earsay is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay." *Ortiz*, 74 Haw. at 357, 845 P.2d at 554 (citations and internal brackets omitted); *see also* HRE 802 (hearsay is not admissible at trial, unless falling under an exception provided in the HRE, in rules prescribed by the Hawai'i Supreme Court, or by statute). We have recognized that the hearsay rule and the confrontation clause are "generally designed to avoid similar evils; however, it is not correct to surmise that the overlap of the two doctrines of law is so complete that the confrontation clause is nothing more than a codification of the hearsay rules of evidence."

*State v. Faafiti,* 54 Haw. 637, 639, 513 P.2d 697, 700 (1973).

Commentators have recognized that the confrontation clause encompasses a greater right than an evidentiary rule of exclusion or inclusion and that satisfaction of one does not necessarily result in compliance with the other. O. Weinstein, *Coy v. Iowa: Reconciling a Defendant's Right to Confrontation with a Child–Witness' Interest in Avoiding Undue Psychological Trauma,* 23 Loy. L.A.L. Rev. 415, 437 (1989) [hereinafter, Weinstein].

> The Confrontation Clause embodies notions of individual rights far broader than the technical hearsay rules. The confrontation right provides the criminal defendant with the opportunity to defend himself [or herself] through our adversary system by prohibiting ex parte trials, granting the defendant an opportunity to test the evidence in front of the jury, and guaranteeing the right to face-to-face confrontation. By using hearsay to determine the scope of confrontation, the Confrontation Clause would cease to be a guarantee of individual liberty, secured through the simultaneous functioning of its components interpreted like other fundamental rights, to become a "mere vestigial appendix of the hearsay doctrine." This would deprive the Confrontation Clause of any force beyond that which the hearsay rule already provides, thus rendering the Confrontation Clause useless.

Weinstein, *supra,* at 438 (footnotes omitted).

The United States Supreme Court has observed that

> [g]iven the similarity of the values protected, however, the modification of a State's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause.

*Green,* 399 U.S. at 156, 90 S.Ct. at 1934. For example, in *Ortiz,* the trial court admitted out-of-court statements under HRE 803(b)(2) (1985)—the excited utterance exception.[5] On appeal, Ortiz argued that his right of confrontation was violated because the hearsay was admitted without a showing of the declarant's unavailability. The prosecution pointed out that such a showing was not required in the rules of evidence because the reliability and trustworthiness of an excited utterance were sufficient to allow the hearsay into evidence. *Ortiz,* 74 Haw. at 361, 845 P.2d at 555.

Although concluding that the excited utterance at issue in *Ortiz* constituted admissible hearsay under HRE 803(b)(2), we held that the statement was improperly admitted. Relying on the two-part test established by the United States Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), we held that the defendant's constitutional right of confrontation had been violated because the prosecution had failed to demonstrate the unavailability of the declarant. In *Roberts,* the Supreme Court stated:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment *establishes a rule of necessity.* In the usual case …, *the prosecution must either produce, or demonstrate the unavailability of, the declarant* whose statement it wishes to use against the defendant.
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances *only hearsay marked with such trustworthiness* that there is no material departure from the reason of the general rule.

---

5. Under HRE 803(b)(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[,]" referred to as an "excited utterance," is not excluded by the hearsay rule, even though the declarant is available as a witness.

*Id.* at 65, 100 S.Ct. at 2538 (emphasis added) (internal citations and quotations marks omitted).

With respect to the "rule of necessity," we stated in *McGriff,* a case dealing with the co-conspirator hearsay exception, HRE 803, that

> we have remained resolute that under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants. In so holding, we have parted ways with the United States Supreme Court which has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions.

*McGriff,* 76 Hawai'i at 156, 871 P.2d at 790 (internal quotation marks, brackets, and citation omitted) (departing from *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), in which statements of a non-testifying co-conspirator were admissible regardless of the declarant's availability at trial, and *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), wherein the admissibility of an excited utterance was not premised upon a showing of a child complainant's unavailability).

The dispositive issue in this appeal is whether compliance with HRE 616(b), under the circumstances of this case, nevertheless violated Apilando's constitutional right of confrontation. The prosecution, relying on *Green,* argues that producing the complainant at trial, following the presentation of the videotape evidence, afforded Apilando "full and effective cross-examination" of the complainant-declarant at trial, and thus, his right of confrontation was preserved. Based on our reading of *Green,* we believe that the prosecution's reliance on that case is misplaced.

In *Green,* the defendant was accused of supplying marijuana to a minor. At a preliminary hearing, the minor identified the defendant as his supplier. However, at trial, the minor claimed that he "was uncertain how he obtained the marihuana primarily because he was at the time on 'acid' (LSD), which he had taken 20 minutes before [Green] phoned." 399 U.S. at 152, 90 S.Ct. at 1932. The trial court ruled the statements to be inconsistent and admitted the minor's prior statements both as impeachment evidence and as substantive evidence. In holding that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements [as substantive evidence], as long as *the declarant is testifying as a witness and subject to full and effective cross-examination,*" *id.* at 158, 90 S.Ct. at 1935 (emphasis added), the United States Supreme Court stated:

> [The minor's] statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. [The minor] was under oath; [the defendant] was represented by counsel—the same counsel in fact who later represented him at the trial; [the defendant] had every opportunity to cross-examine [the minor] as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, [the minor's] statement would, we think, have been admissible at trial even in [the minor's] absence if [the minor] had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced.

*Id.* at 165, 90 S.Ct. at 1938. *Green,* however, requires that the prosecution must *first* make every effort to introduce the hearsay evidence through the *live testimony* of the declarant [6] and, only upon a showing of the

---

**6.** The United States Supreme Court stated in *Green:*

> As in the case where the witness is physically unproducible, the State here has made every effort to introduce its evidence through the *live testimony* of the witness; it produced [the de-

clarant] at trial, swore him as a witness, and tendered him for cross-examination. Whether [the declarant] *then testified* in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-

witness's unavailability, as demonstrated in *Green* by the witness's lapse of memory, would the out-of-court statement be held admissible. The Court explained:

> Our own decisions seemed to have recognized at an early date that it is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
> > "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

399 U.S. at 157–58, 90 S.Ct. at 1935 (quoting *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895)).

In the present case, the videotaped interview was offered under fundamentally different circumstances than those present in *Green*. Here, the videotaped interview was presented in lieu of the complainant's direct testimony, as part of the prosecution's case-in-chief. Further, the complainant's statements, at the time of the interview, were not subject to cross-examination, nor was Apilando present at the interview to face his accuser. The videotape was offered without a determination of necessity, that is, there was no determination whether the complainant would recant, would have insufficient recollection, or would be unable to communicate

the events surrounding the alleged assault. The tape was not offered as a prior inconsistent statement to impeach her testimony nor was it offered to restore her credibility on rebuttal. Additionally, the videotaped interview cannot be said to have been offered as a past recollection recorded pursuant to HRE 802.1(4) [7] because the requisite showing that the declarant "once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately," HRE 802.1(4), was not demonstrated prior to the introduction of the videotape.

Other cases cited by the prosecution are likewise distinguishable. For example: (1) in *Story v. Collins*, 920 F.2d 1247 (5th Cir. 1991), the complainant's videotaped statement that became the basis of a police report was admissible only after the complainant testified and was subject to full and effective cross-examination concerning the videotape; (2) in *Buckley v. State*, 786 S.W.2d 357 (Tex. Cr.App.1990), the complainant testified on direct examination and was subject to full cross-examination. Moreover, the complainant's prior outcry statement was admitted to establish inconsistencies in the testimony of and to impeach other witnesses; and (3) in *Newberry v. State*, 184 Ga.App. 356, 361 S.E.2d 499 (1987), notwithstanding the trial court's failure to make a finding of unavailability, the court of appeals upheld the trial court's admission of prior videotaped statements because the statements were surrounded by sufficient indicia of reliability. In so holding, however, the *Newberry* court noted that the defendant had not preserved at the trial level the issue whether the defendant's right of confrontation was violated because of the trial court's failure to make a finding of unavailability. We note that, with the exception of two cases,[8] all of the cases

---

incrimination or simply refused to answer, nothing in the Confrontation Clause prohibited the State from *also* relying on his prior [statement] to prove its case against [the defendant]. 399 U.S. at 167–68, 90 S.Ct. at 1939–40 (emphases added).

7. *See supra* note 4.

8. One of the two exceptional cases cited by the dissent, the *Newberry* case, is distinguished

above. The other case, *State v. Feazell*, 486 So.2d 327 (La.Ct.App.), *writ denied*, 491 So.2d 20 (La.1986), dissenting opinion at 144–45, 900 P.2d at 151–52, involved Louisiana's statute governing the admissibility of videotapes, which included the provision that "[n]othing in this Section shall be construed to prohibit the defendant's right of confrontation." *Id.* at 330. The court of appeals in *Feazell* upheld the introduction of the hearsay evidence as direct testimony based upon full compliance with the aforemen-

cited by the dissent, *see* dissenting opinion at 144–48, 900 P.2d at 151–55, involve situations wherein the victim-declarants first testified live on direct examination; thus, the admission of their prior out-of-court statements were held not violative of the confrontation clause. In those cases, the appropriateness of admitting the otherwise prohibited evidence was based on purely evidentiary analysis.

We are cognizant of the policy interest in protecting the child-witness who is a victim of an alleged sex offense. However, any procedure adopted in furtherance of such a policy must include a specific determination of necessity in order to be constitutionally acceptable. For example, in *Coy*, the defendant was accused of sexually abusing two thirteen-year-old girls while they were sleeping. The only witnesses against the defendant were the children. During the defendant's jury trial, the court placed a screen between the defendant and the minor witnesses pursuant to an Iowa statute, which provided in pertinent part that:

> The court may require a party be confined [sic] to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.

*Coy*, 487 U.S. at 1014 n. 1, 108 S.Ct. at 2799–2800 n. 1 (reference to "sic" in original). Justice Scalia, writing for the majority of the Court, invalidated the Iowa statute and reiterated its recognition in *Green* of " 'the literal right to "confront" the witness at the time of trial' as forming 'the core of the values furthered by the Confrontation Clause.' " *Id.* at 1017, 108 S.Ct. at 2801 (quoting *Green*, 399 U.S. at 157, 90 S.Ct. at 1934). The Court, in describing the operation of the confrontation clause, stated:

> [A] fact which can be primarily established only by witnesses cannot be proved against an accused ... except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases.

*Coy*, 487 U.S. at 1017, 108 S.Ct. at 2801 (quoting *Kirby v. United States*, 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899)).

Although the Court held that the defendant's confrontation right was absolute, it acknowledged the possibility of exceptions, but stated that it would leave the issue "for another day," because the trial court in *Coy* had made no finding of necessity that a face-to-face meeting at trial would have adversely affected the young witnesses. The Court explained:

> We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy. The State maintains that such necessity is established here by the statute, which creates a legislatively imposed presumption of trauma. Our cases suggest, however, that even as to exceptions from the normal implications of the Confrontation Clause, as opposed to its most literal application, something more than the type of generalized finding underlying such a statute is needed when the exception is not "firmly ... rooted in our jurisprudence." The exception created by the Iowa statute, which was passed in 1985, could hardly be viewed as firmly rooted. Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.

*Coy*, 487 U.S. at 1021, 108 S.Ct. at 2803 (internal citations omitted).

---

tioned statute, without any analysis regarding the constitutionality of the statute. Absent such an analysis, as well as an analysis regarding the effect of the confrontation clause on the hearsay rule at issue in that case, we are not persuaded by the rationale of the *Feazell* court because, as

previously stated, compliance with evidentiary rules does not ensure that confrontation rights are satisfied. *See* Weinstein, *supra* at 437; *see also Roberts*, 448 U.S. at 66 n. 9, 100 S.Ct. at 2539 n. 9.

In its analysis, the Court once again distinguished the sixth amendment right to confront one's accusers from other sixth amendment guarantees, specifically the right to cross-examine.

The perception that confrontation is essential to fairness has persisted over the centuries because there is truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss—the right to cross-examine the accuser; both "ensur[e] the integrity of the factfinding process." The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token[,] it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Id.* at 1019–20, 108 S.Ct. at 2802 (internal citations omitted).

 Although this court has not explicitly held that the right of confrontation includes an accused's right to a literal face-to-face confrontation with the witnesses who testify against him or her at trial, we do so today. However, we also recognize that exceptions do exist, such as that provided by the present version of HRE 616(b), discussed *infra.* We agree with Justice O'Connor, who stated in her concurring opinion in *Coy:*

> I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court *makes a case-specific finding of necessity,* as is required by a number of state statutes, our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses. Because nothing in the Court's opinion conflicts with this approach and this conclusion, I join it.

487 U.S. at 1025, 108 S.Ct. at 2805 (O'Connor, J., concurring) (internal citations omitted) (emphasis added).

In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the United States Supreme Court addressed a Maryland statute that permits examination by the prosecution and defense counsel of a child witness, who is alleged to be a victim of child abuse, via one-way closed circuit television.

> To invoke the procedure, the trial judge must first "determin[e] that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." Md.Cts. & Jud.Proc. Code Ann. § 9–102(a)(1)(ii) ·(1989). Once the procedure is invoked, the child witness, prosecutor, and defense counsel withdraw to a separate room; the judge, jury, and defendant remain in the courtroom. The child witness is then examined and cross-examined in the separate room, while a video monitor records and displays the witness' testimony to those in the courtroom. During this time the witness cannot see the defendant. The defendant remains in electronic communication with defense counsel, and objections may be made and

ruled on as if the witness were testifying in the courtroom.

*Id.* at 840–42, 110 S.Ct. at 3161. In a 5–4 decision upholding the constitutionality of the statute, Justice O'Connor, writing for the majority, reiterated her stance and applied the principles set forth in her concurring opinion in *Coy.*[9] The Court stated:

> The Maryland Court of Appeals held, as we do today, that although face-to-face confrontation is not an absolute constitutional requirement, it may be abridged only where there is a " 'case-specific finding of necessity.' " Given this latter requirement, the Court of Appeals reasoned that "[t]he question of whether a child is unavailable to testify ... should not be asked in terms of inability to testify in the ordinary courtroom setting, but in the much narrower terms of the witness's inability to testify in the presence of the accused." "[T]he determinative inquiry required to preclude face-to-face confrontation is the effect of the presence of the defendant on the witness or the witness's testimony." The Court of Appeals accordingly concluded that, as a prerequisite to use of the § 9–102 procedure, the Confrontation Clause requires the trial court to make a specific finding that testimony by the child in the courtroom *in the presence of the defendant* would result in the child suffering serious emotional distress such that the child could not reasonably communicate. This conclusion, of course, is consistent with our holding today.

*Id.* at 857–58, 110 S.Ct. at 3170 (internal citations omitted and emphasis in original).

█ Apilando contends that there was no determination of unavailability or other compelling reason to abrogate his right of confrontation. We agree. Simply producing the declarant, without having him or her testify on *direct examination*, (1) is insufficient to satisfy the determination of necessity referred to by Justice O'Connor and as established by *Roberts*, and (2) violated Apilando's right to confront his accuser face-to-face.

█ Unavailability may be demonstrated by a showing of a declarant's death, illness, infirmity, *age*, insanity, *loss of memory*, speech or sight, absence from the jurisdiction, and disappearance or an inability to secure the declarant's presence at trial due to official duty preventing his or her presence, or disqualification by infamy. *Tsuruda v. Farm*, 18 Haw. 434, 438 (1907) (emphases added); *see McGriff*, 76 Hawai'i at 156, 871 P.2d at 790 (showing of unavailability met by refusal of co-conspirator to testify at trial); *Ortiz*, 74 Haw. at 363, 845 P.2d at 556–57 (prosecution failed to show good faith attempt to secure declarant's presence at trial); *State v. Altergott*, 57 Haw. 492, 559 P.2d 728 (1977) (although not totally lacking in recall, declarant held unavailable because of insufficient recollection to testify fully and accurately); *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (declarant held unavailable because incapable of communicating to the jury due to declarant's

---

9. Justice Scalia, writing for the minority in *Craig*, reaffirmed his position that the right to face-to-face confrontation is absolute:

> The Court claims that its interpretation of the Confrontation Clause "is consistent with our cases holding that other Sixth Amendment rights must also be interpreted in the context of the necessities of trial and the adversary process." *Ante* [497 U.S.], at 850 [110 S.Ct. at 3166]. I disagree. It is true enough that the "necessities of trial and the adversary process" limit the *manner* in which Sixth Amendment rights may be exercised, and limit the *scope* of Sixth Amendment guarantees to the extent that scope is textually indeterminate. Thus (to describe the cases the Court cites): The right to confront is not the right to confront in a manner that disrupts the trial. The right "to have compulsory process for obtaining witnesses" is not the right to call witnesses in a manner that

> violates fair and orderly procedures. The scope of the right "to have the assistance of counsel" does not include consultation with counsel at all times during the trial. The scope of the right to cross-examine does not include access to the State's investigative files. But we are not talking here about denying expansive scope to a Sixth Amendment provision whose scope for the purpose at issue is textually unclear; "to confront" plainly means to encounter face to face, whatever else it may mean in addition. And we are not talking about the manner of arranging that face-to-face encounter, but about whether it shall occur at all. The "necessities of trial and the adversary process" are irrelevant here, since they cannot alter the constitutional text.

> *Id.* at 863–64, 110 S.Ct. at 3173 (Scalia, J., dissenting) (internal citations omitted).

young age); *see also* HRE 804(a)(1)–(5) (1985).[10]

In the present case, there was no showing by the prosecution that the complainant was "unavailable" by virtue of her age, inability to communicate, lack of memory, or insufficient recollection before presenting the videotaped interview. The prosecutor merely represented at the hearing on Apilando's motion in limine to exclude the videotaped interview that, "[if] I placed the child on the witness stand, I can not [sic] tell you with certainty that she'll be able to recollect the event either because she doesn't want to or she cannot." The trial court apparently allowed the videotaped interview to be utilized in lieu of the complainant's live testimony based solely on the prosecutor's representation without requiring a showing that the complainant, in fact, could not or did not want to recall events of the alleged assault.

Indeed, the record reflects that the complainant was "available" and did testify regarding the alleged assault at Apilando's first trial, which was held only eleven months prior to the second trial. At the second trial, the complainant was again "produced" and "available" to testify, but was limited to testifying on cross and "re-direct" examination.

By allowing videotaped evidence to be presented in lieu of live, in-court testimony, the primary purposes of the confrontation clause are not met, notwithstanding the propriety of the admission under the rules of evidence. Even if the declarant is produced and cross-examined, the face-to-face meeting of the accused and his or her accuser, as discussed in *Green* and *Coy*, is absent.[11] Further, even if the declarant could be cross-examined,

such belated cross-examination "is not cross-examination at all because the passage of time destroys the defendant's opportunity to subject the [out-of-court] statement to an immediate challenge to determine its truthfulness and credibility." Comment, *The New Illinois Videotape Statute in Child Sexual Abuse Cases: Reconciling the Defendant's Constitutional Rights with the State's Interest in Prosecuting Offenders,* 22 J. Marshall L.Rev. 331, 353 (1988). "The chief merit of cross examination is not that at some future time it gives the party opponent the right to dissect adverse testimony. *Its principal virtue is in its immediate application of the testing process.* Its strokes fall while the iron is hot." *State v. Saporen,* 205 Minn. 358, 362, 285 N.W. 898, 901 (1939) (emphasis added).

In *State v. Pilkey,* 776 S.W.2d 943 (Tenn. 1989), *cert. denied,* 494 U.S. 1032, 1046, 110 S.Ct. 1483, 1510, 108 L.Ed.2d 619, 646 (1990), a child protective services worker had conducted a videotaped interview of the child-victim approximately one month after the child allegedly had been sexually abused. The videotaped interview was played for the jury at the time of trial in lieu of the child's direct testimony. The child, although apparently present and available to be called as a witness, was not called by either party.

The court noted that, under a state statute, the "videotaped interview would be admissible, as substantive evidence, during the state's case-in-chief where 'either party is allowed to call the child as a witness' and where 'the opposing party' is allowed to 'cross-examine' the child." *Id.* at 948. However, the court ruled that to "permit a videotape procured outside the defendant's pres-

---

10. Under HRE 804(a), unavailability as a witness includes situations in which the declarant:
 (1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
 (2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
 (3) Testifies to a lack of memory of the subject matter of the declarant's statement; or
 (4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

 (5) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.

11. By validating HRE 616(b), the dissent casts aside the face-to-face confrontation clause requirement and effectively reduces the confrontation clause "to ... a 'mere vestigial appendix of the hearsay doctrine[,]' ... depriv[ing] the Confrontation Clause of any force beyond that which the hearsay rule already provides, thus rendering the Confrontation Clause useless." Weinstein, *supra,* at 438.

ence to be used as evidence in chief by the prosecution ... impermissibly infringes upon the confrontation rights of the accused." *Id.* at 951 (footnote omitted).

In reaching its decision, the *Pilkey* court, relying on *State v. Bastien,* 129 Ill.2d 64, 133 Ill.Dec. 459, 541 N.E.2d 670 (1989), stated:

The crucial difference, however, between the out-of-court statement in *Green* and the out-of-court videotaped statement in the case at bar is that in *Green* the statement was a prior inconsistent statement. It is clear that the nature of the statement at issue was critical to the Court. In a passage most pertinent to the case at bar, the Court stated:

The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness' "[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." That danger, however, disappears when the witness has changed his testimony so that, far from "hardening," his prior statement has softened to the point where he now repudiates it.

The danger identified by the Supreme Court is precisely the danger presented by the delayed cross-examination authorized by the challenged statute. It is quite possible that the videotaping and the trial will take place months apart. During that time, the child undoubtedly will have contact with the prosecutor and relatives who, consciously or unconsciously, may influence the child. We are convinced that the statute, by prohibiting contemporaneous cross-examination, unnecessarily and impermissibly infringes on an accused's right of confrontation.

*Pilkey,* 776 S.W.2d at 950 (quoting *Bastien,* 129 Ill.2d at 76–77, 133 Ill.Dec. at 464–65, 541 N.E.2d at 675) (internal citations omitted). In *Bastien,* the Illinois Supreme Court, in holding that its child shield statute, which is similar to HRE 616(b), violated the defendant's right of confrontation, stated:

Under the terms of the statute, the child witness *must* be available to testify and to submit to cross-examination at trial; thus, "there is little justification for relying on the weaker version"—the videotaped statement. And this is particularly true where the statute, although its permissive language indicates that the trial court has discretion in allowing use of the videotape procedure, does not expressly require the State to demonstrate any necessity for the procedure.

*Bastien,* 129 Ill.2d at 78, 133 Ill.Dec. at 465, 541 N.E.2d at 676 (emphasis in original).

We believe that HRE 616(b), which permitted the introduction of a child victim's videotaped statement without a showing of necessity, likewise impermissibly infringed on Apilando's right of confrontation. By the time the complainant in the matter before us appeared and testified live and in court, the specific details of the incident had already been made known to the jury via the videotape presented in lieu of the complainant's direct testimony, thus depriving Apilando of the ability to test the truth of the witness's statements against him.

Moreover, the "inability to engage in contemporaneous cross-examination handicaps the defendant by preventing him [or her] from impeaching the witness while the witness' testimony is still fresh and susceptible to challenge." 22 J. Marshall L.Rev. at 352 (footnote omitted). By not requiring the prosecution to present its evidence through the live, in-court testimony of the complainant or to demonstrate the complainant's "unavailability" prior to presenting the videotape, Apilando was not only precluded from confronting his accuser face-to-face and contemporaneously cross-examining her, but he was also effectively precluded from making crucial tactical decisions regarding his defense.

It is apparent, based on our review of the videotaped interview, which was admitted into evidence, that the complainant was an extremely sympathetic witness—a cute, adorable five-year-old who explicitly demonstrated, by using a male and female doll, how she was allegedly abused by the defendant. We

believe that any defense attorney, faced with such damaging evidence, would have vigorously attempted to prevent its admission.

The complainant in this case did testify on cross and re-direct examination; however, she was unable to recall or testify about specific details regarding the incident. For example, as previously indicated, the complainant claimed that she could not remember what Apilando had done after he pushed her down, and, although she remembered that he had "touched" her, she did not want to say where he touched her. Had she so testified on live direct examination, the defense would have had the opportunity to revive her memory through cross-examination and perhaps elicit the testimony given only eleven months before at the first trial, which might have, once again, resulted in a ruling that the videotaped interview would be cumulative and thus inadmissible. Clearly, the fact that the complainant testified live at the first trial, which took place almost two years (specifically twenty-three months) after the incident, and in such detail that the videotaped interview was deemed cumulative, raises the question whether her memory was, in fact, insufficient to meet the foundational requirements under HRE 802.1(4) (*i.e.*, past recollection recorded).

By allowing the videotaped interview to be presented in lieu of direct testimony, defense counsel was effectively precluded from pursuing, among others, the aforementioned strategy. By presenting the jury with the "perfect testimony," describing in detail the events that occurred prior, during, and after the alleged assault via the videotape, any attempt at cross-examination may have been futile because any questions posed to the complainant in an effort to impeach or discredit her at that point would probably have been viewed as harassment, which, in turn, might have inflamed the jury against Apilando.[12]

Moreover, we note that the burden of establishing the declarant's "unavailability" through, for example, lack of memory, insufficient recollection, or inability to communicate, rests with the prosecution. *Roberts*, 448 U.S. at 75, 100 S.Ct. at 2543–44. It is insufficient for the prosecuting attorney simply to assert that the witness might not remember or might not be able to testify, as she did at the hearing on the motion in limine in this case, nor can the prosecuting attorney simply put the witness on the stand and elicit a negative response to the question, "Do you recall what happened?" Allowing such tactics would compromise the factfinding process by encouraging facile assertions by prosecutors and witnesses of lack of memory or insufficient memory in order to avoid testifying live and in court on direct examination.

Further, as previously noted, HRE 616, as amended, became effective on June 10, 1993, two days after Apilando was found guilty. The amended version of HRE 616 essentially retained that portion of the rule dealing with transmission, via closed-circuit equipment, of the live testimony of a child-abuse complainant from a remote location into the courtroom. *See* HRE 616 (Comp.1993). The other portion of the original version, HRE 616(b), which is at issue in this case, was relocated and transformed into a "statement by child" hearsay exception in HRE 804(b)(6) and included any prior recorded statement,

12. The dissent's suggested holding that "any error in allowing the prosecution to introduce the videotape prior to the victim's live testimony was harmless," dissenting opinion at 150, 900 P.2d at 157, is based on speculation. The dissent, relying on the complainant's actual testimony on "cross-" and "redirect" examination made after the videotape was introduced, surmises that such testimony would have been identical had the complainant testified live on direct examination. Based on this assumption, the dissent approves of the admission of the videotape in lieu of direct testimony. Such an analysis, however, reflects a misunderstanding of the right to full and effective cross-examination. We emphasize that, had the complainant testified as the dissent suggests, defense counsel, having possession of the transcript from the first trial, would not have been reluctant to review the unrecalled details on cross-examination with the complainant in an attempt to refresh her recollection. Such strategy, we reiterate, may have precluded the admission of the videotaped evidence as it was in the first trial. Whether such result would have been actually accomplished is irrelevant. Therefore, had the complainant testified live on direct and cross-examination, regardless of the quality of her testimony, the requirement of face-to-face confrontation and full and effective cross examination would have been met.

by videotape or otherwise, of a child-complainant who is *unavailable*. Although the amended version of the rule is inapplicable to the present appeal, the underlying reasons that led to the amendment confirm our holding in this case that Apilando's constitutional right of confrontation was violated.

As noted by the House Committee on Judiciary, "the proposed amendments made to Rules 616 and 804 remove potential constitutional deficiencies as discussed and recommended by the Final Report [of the Committee on Hawai'i Rules of Evidence (the Committee)]." Hse.Stand.Comm.Rep. No. 511, in 1993 House Journal at 1180. One of the reasons cited by the Committee in its Final Report regarding the proposed statement by child hearsay exception was that the "[e]xisting rule 616(b), to the extent it might be thought to apply to the prior statements of currently unavailable declarants, is unconstitutional because it fails to measure up to Sixth Amendment Confrontation Clause requirements." Final Report at 36. Explicit in the current version of the rule, which was conspicuously absent from the original version, is the threshold requirement of showing a declarant's unavailability, consistent with the first prong of the *Roberts* test. The current version also provides that a child's statement is admissible only "if the court determines that the time, content, and circumstances of the statement provide strong assurances of trustworthiness[,]" HRE 804(b)(6) (Comp.1993), consistent with the second prong of the *Roberts* test.

Because the former version of HRE 616(b) impermissibly allowed the introduction of hearsay evidence without the requisite showing of necessity, and further because the prosecution in this case failed to demonstrate that the complainant lacked sufficient memory to testify fully and accurately, was unable to communicate, or was otherwise "unavailable," we hold that the admission of the complainant's videotaped interview in lieu of direct examination violated Apilando's right of confrontation under article I, section 14 of the Hawai'i Constitution.

Having held that Apilando's right of confrontation under the Hawai'i Constitution was violated based on the first prong of the *Roberts* test, we need not reach the issue whether the videotaped interview bore the adequate indicia of reliability as required by the second prong.

### B. *Prosecutorial Misconduct*

Because violation of Apilando's state constitutional right of confrontation requires vacating the trial court's judgment and sentence and remanding the case for a new trial, we address Apilando's contentions regarding prosecutorial misconduct for purposes of providing instruction and guidance on remand for the trial court and the attorneys. Briefly, Apilando contends that the prosecution sought to elicit sympathy for the complainant via police officer Anson Kimura's testimony regarding the complainant's clutching her teddy bear at the hospital. Apilando also contends that, during closing argument, the prosecution: (1) made repeated references to the complainant's age and the trauma she endured by having to submit to a pelvic examination; (2) attacked Apilando's credibility based on his interest in the outcome of the case; and (3) requested that the jury "send a message" to the community that Apilando's actions were wrong and would not be tolerated.

 First, although we recognize that there was no objection to officer Kimura's testimony regarding the complainant and her teddy bear, we believe that the officer's observations of the complainant's appearance and demeanor at the hospital were relevant and served as circumstantial evidence regarding whether her behavior was consistent with a child of her age who had experienced a recent upsetting event. The remarks regarding the complainant's age and the "terrible" examination to which she was subjected were drawn directly from the evidence presented and were therefore a proper summation of the evidence. *See State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990) (in summing up a case before a jury, counsel may draw reasonable inferences from the evidence and considerable latitude is allowed in discussing it); *see also Kinder v. State*, 515 So.2d 55 (Ala.Crim.App.1986); *State v. Deboue*, 496 So.2d 394 (La.App.1986), *appeal denied*, 501 So.2d 229 (1987); *People v.*

*Clark,* 5 Cal.4th 950, 22 Cal.Rptr.2d 689, 857 P.2d 1099 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2783, 129 L.Ed.2d 894 (1994); *People v. Batson,* 225 Ill.App.3d 157, 167 Ill.Dec. 280, 587 N.E.2d 549 (1992), *appeal denied,* 146 Ill.2d 633, 176 Ill.Dec. 805, 602 N.E.2d 459 (1992).

■ Second, with respect to the prosecutor's attack on Apilando's credibility, Apilando contends that it was improper for the prosecutor to comment that, because Apilando had the highest stake in the outcome of the case, he had the greatest motive to lie. This court has held that, when a defendant takes the stand to testify, his or her credibility can be tested in the same manner as any other witness. *State v. Pokini,* 57 Haw. 17, 22, 548 P.2d 1397, 1400 (1976); *see also* HRE 609.1(a) (1985) (Generally, "the credibility of a witness may be attacked by evidence of bias, interest, or motive.") Apilando testified on his own behalf, and, by so doing, subjected himself to attacks on his credibility. We believe the prosecution's comments regarding Apilando's interest in the case were not improper. *See, e.g., People v. Dall,* 207 Ill. App.3d 508, 527, 152 Ill.Dec. 442, 453, 565 N.E.2d 1360, 1371 (prosecutor's statement that defendant had better motive than victim to lie was not error), *appeal denied,* 139 Ill.2d 599, 159 Ill.Dec. 111, 575 N.E.2d 918 (1991); *People v. Bunyard,* 45 Cal.3d 1189, 249 Cal.Rptr 71, 92–94, 756 P.2d 795, 816–18 (1988) (prosecutor's argument that defendant was an "interested party" and had motive to lie in order to avoid conviction deemed appropriate); *Walls v. State,* 560 A.2d 1038, 1049 (Del.) (proper for prosecutor to argue that defendants were biased because they had a big stake in the outcome of the case), *cert. denied,* 493 U.S. 967, 110 S.Ct. 412, 107 L.Ed.2d 377 (1989).

Finally, we address Apilando's contention that the prosecutor's "send a message" re-

mark was improper. During closing argument, the prosecutor asked the jury to "send a message to the defendant that his actions were wrong, they're not to be tolerated by this community. You have an authority to do that, ladies and gentlemen, and I'm asking you to find him guilty[.]"

Relying on *State v. Ruff,* 252 Kan. 625, 847 P.2d 1258 (1993), Apilando argues that "it is intolerable for a prosecutor to divert the jury's attention from the facts by urging them to 'send a message' to the community that certain conduct was not condoned." In *Ruff,* the prosecutor had argued to the jury "not [to] allow this conduct to be tolerated in our community." The *Ruff* court observed that

[t]he prosecutor's last statement to the jurors prior to their determination as to Ruff's guilt was that the jury had a duty to send a message to the community that certain conduct will not be tolerated. The prosecutor's statement implied that if the jury found Ruff not guilty, her conduct would be tolerated.

*Id.* 847 P.2d at 1266.

■ Despite the many cases in other jurisdictions that have deemed appropriate the use of "send a message" remarks that appeal to the jury's sense of law and order,[13] we believe that such remarks could "divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law." *Id.* at 1265 (quoting 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8 (1980)). It is true that the jury represents the community, and, thus, what is tolerated by the jury most likely reflects what is tolerated by the community. However, we believe that there is a significant risk that the jury might find the defendant guilty simply based on its

---

**13.** *See, e.g., People v. Chavez,* 265 Ill.App.3d 451, 460, 201 Ill.Dec. 880, 887, 637 N.E.2d 469, 476 (closing argument asking the jury to "send a message to the community that you support law and order, that you will support justice" was proper), *appeal denied,* 157 Ill.2d 509, 205 Ill. Dec. 172, 642 N.E.2d 1289 (1994); *State v. Mays,* 884 S.W.2d 405, 409 (Mo.App.1994) (prosecutor may legitimately argue that jury should send a message that criminal conduct will not be toler-

ated or should be severely punished); *People v. Batson,* 225 Ill.App.3d 157, 166, 167 Ill.Dec. 280, 287, 587 N.E.2d 549, 556 (proper for a prosecutor to "dwell upon the evil results of crime and to urge the fearless administration of the law" (citation omitted)), *appeal denied,* 146 Ill.2d 633, 176 Ill.Dec. 805, 602 N.E.2d 459 (1992); *Bryant v. State,* 249 Ga. 242, 290 S.E.2d 75, 76 (1982) (prosecutor's appeal to jury to convict "for the safety of the community" allowed).

view that the conduct the defendant is accused of committing is intolerable, even though it has not been proved beyond a reasonable doubt or otherwise fails to support a conviction of the charged offense. Accordingly, we hold that the prosecutor's plea that the jury send a message to the defendant that his conduct would not be tolerated by the community was improper. However, because we vacate Apilando's conviction based on the violation of his right of confrontation, we need not reach the question whether the improper remark rises to the level necessary to constitute reversible error.

## III. CONCLUSION

Based on the foregoing, we vacate the trial court's judgment and sentence and remand this case for new trial.

KLEIN, Justice, dissenting, in which NAKAYAMA, J., joins.

For the reasons set forth below, I disagree with the majority's holding that "the admission of the complainant's videotaped interview in lieu of direct examination violated Apilando's right of confrontation under article I, section 14 of the Hawai'i Constitution." *Majority* at 141, 900 P.2d at 148. Accordingly, I dissent.

## I. The "unavailability" requirement

As noted by the majority, *majority* at 132–33, 900 P.2d at 139–40, when considering claimed violations of the confrontation clause of article I, section 14 of the Hawai'i Constitution, we have steadfastly adhered to the analysis propounded by the United States Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), despite the fact that the Supreme Court has subsequently limited the scope of that analysis under the sixth amendment to the United States Constitution. *See State v. McGriff,* 76 Hawai'i 148, 871 P.2d 782 (1994); *State v. Ortiz,* 74 Haw. 343, 845 P.2d 547, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993); *but see State v. Ofa,* 9 Haw.App. 130, 828 P.2d 813 (1992).

I believe, however, that the majority has misapplied the *Roberts* test. According to

the first part of the *Roberts* test, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." 448 U.S. at 65, 100 S.Ct. at 2538. I agree with the majority that the prosecution failed to demonstrate the unavailability of the declarant in the instant case. *See majority* at 138, 900 P.2d at 145. However, because the complainant testified on cross and redirect examination and exhibited an independent, albeit imperfect, recollection of the circumstances surrounding the alleged assault, *see majority* at 130–31, 900 P.2d at 137–38, I believe the declarant was "produced" within the meaning of the *Roberts* test, and Apilando's right to confront the witnesses against him was not violated.

As I understand the majority's analysis, in its view, before out-of-court statements can be admitted as evidence, the *Roberts* test requires the prosecution to demonstrate the unavailability of the declarant even if the declarant is present for cross-examination at trial. In *Roberts,* however, the Supreme Court only held that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable." 448 U.S. at 66, 100 S.Ct. at 2539. Moreover, the majority's reliance on *McGriff, supra,* and *Ortiz, supra,* is misplaced because the hearsay declarant did not testify at trial and was not present for cross-examination in either of those cases. In fact, all of the appellate cases in this jurisdiction that have discussed the unavailability requirement since *Roberts* have dealt with situations in which the hearsay declarant did not testify at trial. *See McGriff, supra; Ortiz, supra; Ofa, supra; State v. Beyer,* 72 Haw. 469, 822 P.2d 519 (1991); *State v. Lincoln,* 71 Haw. 274, 789 P.2d 497, *reconsideration granted in part, denied in part,* 71 Haw. 665, 833 P.2d 900, *cert. denied,* 498 U.S. 907, 111 S.Ct. 277, 112 L.Ed.2d 232 (1990); *State v. Bates,* 70 Haw. 343, 771 P.2d 509 (1989); *In re Interest of Doe,* 70 Haw. 32, 761 P.2d 299 (1988); *State v. Rodrigues,* 7 Haw.App. 80, 742 P.2d 986 (1987); *State v. White,* 65 Haw. 286, 651 P.2d 470 (1982).

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court addressed the issue whether the admission of out-of-court statements of a declarant who is present at trial violates the confrontation clause of the sixth amendment to the United States Constitution. In its discussion of the development of the right to confrontation, the Court noted that historically

> objections ... have been aimed at the failure to call the witness to confront personally the defendant at his trial. So far as appears, in claiming confrontation rights no objection was made against receiving a witness'[s] out-of-court depositions or statements, so long as the witness was present at trial to repeat his story and to explain or repudiate any conflicting prior stories before the trier of fact.
>
> .... Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

399 U.S. at 157–58, 90 S.Ct. at 1934–35. The Court further explained that "[t]his conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement." *Id.* at 158, 90 S.Ct. at 1935. Finally, the Court noted that "none of [the Court's] decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial." *Id.* at 161, 90 S.Ct. at 1936. Indeed, "where the declarant is not absent, but is present to testify and to submit to cross-examination, [the Court's] cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.* at 162, 90 S.Ct. at 1937.

Ultimately, the Court held that

> the Confrontation Clause does not require excluding from evidence the prior state-

ments of a witness who concedes making the statements, and who may be asked to defend or otherwise explain any inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.

399 U.S. at 164, 90 S.Ct. at 1938.

Accordingly, many courts have held that the admission of out-of-court statements of a witness does not violate a defendant's confrontation rights provided that the witness testifies at trial subject to cross-examination. On a number of occasions, as in the instant case, this issue has arisen in the context of out-of-court statements made by children who were allegedly sexually abused.

For example, in *Feleke v. State*, 620 A.2d 222 (Del.1993), within a month after a child had allegedly been sexually abused, the police conducted two interviews of the child. The child testified and was cross-examined at trial. Thereafter, tapes of the two interviews were admitted into evidence.

The Delaware Supreme Court "noted that the Confrontation Clause is not an absolute guarantee of the right to cross-examine, but rather is an availability rule—that requires the production of a witness when he is available to testify." *Feleke*, 620 A.2d at 228 (citation and quotation marks omitted).[1] The court then held that because the child was subject to both direct and cross-examination, "despite [the defendant]'s dissatisfaction with the cross-examination, the Confrontation Clause is satisfied because the defense was given a full and fair opportunity to probe and expose any infirmities through cross-examination[.]" *Id.* (citation, quotation marks, and footnote omitted).

Similarly, in *State v. Feazell*, 486 So.2d 327 (La.Ct.App.), *writ denied*, 491 So.2d 20 (La.1986), about a month after a child had allegedly been sexually abused, a psychologist conducted a videotaped interview with the child. "The State offered the videotape in evidence as the direct testimony of the child

---

1. In addition, by statute in Delaware, a two-part foundation must be established before a witness's out-of-court statements can be admitted: "First, the witness must testify as to the truthfulness of the statement. Second, the witness must testify as to the events perceived or heard." *Feleke*, 620 A.2d at 226–27.

and, at the conclusion of the videotape, tendered the child in person for cross-examination by defendant.... Defense counsel thoroughly cross-examined the child." 486 So.2d at 331.

The defendant "contend[ed] that introduction of the videotape violated his constitutional right of confrontation." *Id.* at 330. The Louisiana Court of Appeal rejected the defendant's argument, holding that "the defendant's constitutional right of confrontation was not violated since he was given an opportunity to cross-examine the witness against him." *Id.* at 331.

Likewise, in *State v. Rogers,* 213 Mont. 302, 692 P.2d 2 (1984), a videotaped interview with a child who was allegedly sexually abused was conducted a few days after the alleged offense and several weeks prior to the defendant's arrest. A detective with experience in sexual abuse and incest cases and a social worker conducted the interview. The child testified at trial and was cross-examined. In addition, the detective who participated in the interview testified. Dur-

ing the detective's testimony, he recounted portions of the videotaped interview. The actual videotape of the interview was later admitted into evidence and shown to the jury.

The "defendant contend[ed] that it was reversible error for the trial court to admit the videotape of the interview into evidence because he was not present [at the interview] to confront and cross-examine [the child]." *Rogers,* 213 Mont. at 308, 692 P.2d at 5. The Montana Supreme Court rejected the defendant's argument holding that because the child "was present and testified at trial[, the d]efendant's rights to confrontation and cross-examination were preserved." *Id.* at 309, 692 P.2d at 6.

Decisions from other courts lend additional support to this interpretation of the confrontation clause. *See, e.g., State v. Gallagher,* 150 Vt. 341, 554 A.2d 221, *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988)[2]; *State v. Carver,* 380 N.W.2d 821 (Minn.Ct.App.1986)[3]; *cf. Cogburn v. State,* 292 Ark. 564, 732 S.W.2d 807 (1987).[4]

2. In *Gallagher,* about a week after a child had allegedly been sexually abused, she told a teacher of the alleged abuse. The child was subsequently interviewed by a social worker. The child testified and was cross-examined at trial. In addition, the teacher and social worker testified; in their testimonies, they recounted statements that had been made by the child.

Citing *Ohio v. Roberts,* the defendant argued that "the United States Supreme Court made 'unavailability' a prerequisite for the admission of all types of hearsay statements[.]" *Gallagher,* 150 Vt. at 344, 554 A.2d at 223. The Vermont Supreme Court rejected the defendant's argument, ruling as follows:

The unavailability of the declarant is not always required for exceptions to the hearsay rule. This particular exception is narrowly drafted for use only with out-of-court statements, found to be trustworthy, of putative child victims of sexual crimes. In addition, *the statutory requirement that the child declarant be available for cross-examination ensures that the defendant's rights under the Confrontation Clause are fully protected.* Therefore the requirement of [the statute], that the child victim be "available" to testify, does not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.

*Id.* at 347, 554 A.2d at 225 (citations omitted; emphasis added).

3. In *Carver,* two allegedly abused children testified at trial. In addition, a doctor who had

examined the children and the mother of one of the children testified; in their testimonies they reported statements that had previously been made by the children.

Although not expressly addressing any constitutional issues, the Minnesota Court of Appeals noted that according to a statute concerning hearsay statements of children who have allegedly been abused, "[w]hen a child is available as a witness, the trial court may admit his or her hearsay statements if it finds that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide 'sufficient indicia of reliability.' " *Carver,* 380 N.W.2d at 825. The court further stated that "the trial court properly admitted the statements made by [the] children because their trial testimony was largely consistent with their earlier statements and *[the defendant] had an opportunity to cross-examine them."* *Id.* (emphasis added).

4. In *Cogburn,* the Arizona Supreme Court stated:

The United States Supreme Court has held that the confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination....

Here, the victim testified at the trial and was subject to unbridled cross-examination. Therefore, the hearsay evidence admitted

On the other hand, some courts have held that the holding in *Green* that when a witness testifies at trial subject to cross-examination the confrontation clause is not offended by the admission into evidence of that witness's out-of-court statements only applies when the proffered out-of-court statements are inconsistent with the witness's trial testimony.

For example, in *State v. Pilkey*, 776 S.W.2d 943 (Tenn.1989), *cert. denied*, 494 U.S. 1032, 1046, 110 S.Ct. 1483, 1510, 108 L.Ed.2d 619, 646 (1990), about a month after a child had allegedly been sexually abused, a child protective services worker conducted a videotaped interview of the child. The videotape of the interview was played for the jury at trial. The interviewer testified at trial, but the child, although apparently present and available to be called as a witness, was not called by either party.

The court noted that under a state statute the "videotaped interview would be admissible, as substantive evidence, during the state's case-in-chief where 'either party is allowed to call the child as a witness' and where 'the opposing party' is allowed to 'cross-examine' the child." *Pilkey*, 776 S.W.2d at 948. Although statutorily acceptable, the court ruled that to "permit a videotape procured outside the defendant's presence to be used as evidence in chief by the prosecution, ... impermissibly infringes upon the confrontation rights of the accused." *Id.* at 951 (footnote omitted).

In reaching its decision, the *Pilkey* court relied heavily on the case of *State v. Bastien*, 129 Ill.2d 64, 133 Ill.Dec. 459, 541 N.E.2d 670 (1989), quoting from it at length as follows:

> against [the defendant] concerning the victim's statements under [the rule] did not violate the confrontation clause[.]
>
> 292 Ark. at 571, 732 S.W.2d at 810–11 (citing *California v. Green, supra*). However, because the appellant had not properly raised the issue, the court expressly refused to address any argument based on *Ohio v. Roberts, supra*, that a declarant must be unavailable before the declarant's statement can be admitted into evidence.
>
> Then, in *Johnson v. State*, 292 Ark. 632, 732 S.W.2d 817 (1987), a case decided the same day as *Cogburn, supra*, the court addressed an argument based on *Roberts, supra*. In that opinion, the court expressly disavowed an interpretation of the confrontation clause whereby "in any case

The crucial difference, however, between the out-of-court statement in *Green* and the out-of-court videotaped statement in the case at bar is that in *Green* the statement was a prior inconsistent statement. It is clear that the nature of the statement at issue was critical to the Court. In a passage most pertinent to the case at bar, the Court stated:

> The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness'[s] "[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." *State v. Saporen*, 205 Minn. 358, 362, 285 N.W. 898, 901 (1939). That danger, however, disappears when the witness has changed his testimony so that, far from "hardening," his prior statement has softened to the point where he now repudiates it.

399 U.S. at 159, 90 S.Ct. at 1935–36[.]

The danger identified by the Supreme Court is precisely the danger presented by the delayed cross-examination authorized by the challenged statute. It is quite possible that the videotaping and the trial will take place months apart. During that time, the child undoubtedly will have contact with the prosecutor and relatives who, consciously or unconsciously, may influence the child. We are convinced that the statute, by prohibiting contemporaneous cross-examination, unnecessarily and im-

> where the witness is present for the trial his prior out-of-court statements may be substituted for live testimony as long as there are indicia of reliability of the prior statement." *Johnson*, 292 Ark. at 642–43, 732 S.W.2d at 822. The court instead held that in most cases unavailability must be demonstrated, but that "where the testimony in court can be expected to be substantially different from that given out of court [as in the case of children who have been sexually abused], ... the reason for the unavailability requirement disappears. The question then becomes solely whether there are sufficient indicia of reliability to make an exception to the hearsay rule." *Id.* at 643–44, 732 S.W.2d at 823.

permissibly infringes on an accused's right of confrontation.

*Pilkey,* 776 S.W.2d at 950 (quoting *Bastien,* 129 Ill.2d at 76–77, 133 Ill.Dec. at 464–65, 541 N.E.2d at 675).

Several courts in other jurisdictions, however, have not found any constitutionally significant difference between the admission of consistent and inconsistent out-of-court statements as long as the declarant testifies at trial subject to cross-examination. In *Felix v. State,* 109 Nev. 151, 849 P.2d 220 (1993), in response to the appellants' argument that their confrontation rights had been violated by the admission into evidence of various hearsay statements of children who had allegedly been sexually abused, the Nevada Supreme Court explained as follows:

> If a child does testify, admission of that child's prior consistent or inconsistent out-of-court statements does not violate the defendant's constitutional right to confrontation, so long as the child is subject to full and effective cross-examination concerning the statements. Although a witness's prior consistent out-of-court statements generally are inadmissible hearsay, such statements do not violate the Confrontation Clause.

*Felix,* 109 Nev. at 175, 849 P.2d at 237 (citations omitted).

Similarly, in *Carson v. Collins,* 993 F.2d 461 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 265, 126 L.Ed.2d 217 (1993), several weeks after a child had allegedly been sexually abused, a social worker conducted a videotaped interview. At trial, the child and the social worker testified and were subject to cross-examination. In addition, the videotape of the interview was admitted into evidence.

In a federal habeas petition, the defendant argued that the admission of the videotape violated his right to confrontation. The court rejected his argument, holding that "introduction of out-of-court statements, even if unreliable, does not violate the confrontation

clause where the declarant testifies at trial subject to full and effective cross-examination." *Carson,* 993 F.2d at 464 (footnote omitted). The court further considered the fact that "[the child]'s live testimony precisely matched her recorded statements[,]" and concluded that the videotape "constituted at worst cumulative evidence, admission of which does not warrant habeas corpus relief [ (i.e., did not deny the accused due process of law) ]." *Id.* at 465 (footnote omitted).

In addition, although not specifically addressing the issue, none of the previously cited cases, *see Feleke, supra; Feazell, supra; Rogers, supra; Gallagher, supra,* relied on the fact that the out-of-court statements were inconsistent with the declarant's trial testimony. *See also Newberry v. State,* 184 Ga.App. 356, 357, 361 S.E.2d 499, 501 (1987) ("Prior consistent statements of a witness who takes the stand and is subject to cross-examination are admissible as substantive evidence.")[5]; *Carver,* 380 N.W.2d at 825 ("[T]he trial court properly admitted the statements made by [the] children because their trial testimony was largely consistent with their earlier statements and [the defendant] had an opportunity to cross-examine them.").

I agree with the cases that hold that the admission of prior statements of a declarant, whether consistent or inconsistent, does not violate the confrontation clause provided that the declarant testifies at trial subject to cross-examination. As in *Green,* I believe that

> [t]his conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation:

> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for

---

**5.** In *Newberry,* although expressly declining to address any constitutional issues (because the appellant had not properly raised them), the court noted that "[u]nlike certain problems envisioned in *Ohio v. Roberts,* [the statute] protects

the defendant's constitutional right of confrontation by affording defendant the dual protection of requiring both the availability of the witness and a sufficient indicia of reliability." 184 Ga.App. at 357, 361 S.E.2d at 501.

the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections.... [A]s far as the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury[.]

Second, the inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial....

[Finally, t]he witness who now relates a ... story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either [affirms,] disavows[,] or qualifies his earlier statement.... The defendant's confrontation rights are not violated, even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost.

It may be true that a jury would be in a better position to evaluate the truth of the prior statement if it could somehow be whisked magically back in time to witness a gruelling cross-examination of the declarant as he first gives his statement. But the question as [I] see it must be not whether one can somehow imagine the jury in "a better position," but whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. On that issue, neither evidence nor reason convinces [me] that contemporaneous cross-examination before the ultimate trier of fact is so much

more effective than subsequent examination that it must be made the touchstone of the Confrontation Clause.

*Green,* 399 U.S. at 158–61, 90 S.Ct. at 1935–36 (footnotes omitted).

There is nothing in the holdings or analyses of *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) and *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), or the majority's lengthy discussion thereof, *see majority* at 135–37, 900 P.2d at 142–44, that detracts from this reasoning. Both of those cases addressed only the issue whether, and under what circumstances, the face-to-face aspect of confrontation can be dispensed with during a witness's trial testimony. In the instant case, no procedures were employed whereby a screen shielded the witness from the defendant as in *Coy,* or the witness testified outside the courtroom via one-way closed circuit television as in *Craig;* the complainant testified in the courtroom in the presence of the defendant. As such, those decisions have little, if any, relevance to the instant case.

Thus, because the complainant testified at trial regarding the circumstances surrounding the alleged assault, and did so in the courtroom in the presence of the defendant, I would hold that Apilando's right to confront the witnesses against him was not violated.

## II. *The use of the videotape as the victim's direct testimony*

One of the majority's primary concerns in the instant case is apparently the fact that the complainant's prior statements were presented in lieu of her direct testimony, as part of the prosecution's case-in-chief. I agree that when a witness is present at trial the admission of the witness's out-of-court statements prior to the witness's live testimony is problematic for a number of reasons.

First, the trial court cannot determine whether the witness will be subject to "full and effective" cross-examination until the witness demonstrates an independent recollection regarding the events that are the subject of the out-of-court statements.[6] If

---

**6.** On the other hand, if a witness's out-of-court statements are not introduced until after the witness has testified, the defendant's ability to adequately cross-examine the witness regarding the

the witness is not subject to "full and effective" cross-examination, then the rationale espoused above loses its persuasiveness.[7]

Second, even if the admission of the out-of-court statements would not violate the confrontation clause, the trial court should retain the authority to exclude the statements under Rule 403 of the Hawai'i Rules of Evidence (HRE).[8] In this context, I agree with the following discussion from *Felix, supra:*

> The admission of hearsay accusations pursuant to [statute] requires additional consideration of how such hearsay testimony interfaces with our rules generally prohibiting the admission of prior consistent statements, prohibiting the admission of cumulative statements, prohibiting one witness from vouching for the testimony of another witness, and permitting the [trial court] judge to exercise discretion in ruling evidence inadmissible when ' its probative value is outweighed by its potentially prejudicial effect.
>
> . . . .
>
> When a [child sexual assault] victim testifies, the State should be able to elicit additional testimony recounting the child-victim's hearsay accusations of [child sexual assault] if the child has not fully and accurately described the crime and its surrounding facts and circumstances. There are numerous instances in which a child witness cannot remember the specifics of an incident, such as when an assault took place or the sequence of events, but may have clearly recited them at a prior time. This hearsay should be admissible if it meets the requirements of [the statute]. However, once sufficient testimony is received to fully assert the child's allegations, additional hearsay testimony should be judiciously limited for the [following] reasons[:] (1) the additional recounting of the alleged crime is usually a prior consistent statement that becomes unnecessary once the victim's allegations have been fully asserted; (2) such testimony is cumulative and usually amounts to the witness vouching for the victim's testimony; and (3) the continued repetition of [child sexual assault] accusations would usually render such testimony more prejudicial than probative.

*Felix,* 109 Nev. at 199–201, 849 P.2d at 253.

Finally, HRE Rule 616(b)'s requirement that "[t]he child [be] present to testify"

---

matters asserted in those statements may be hampered.

In *Felix, supra,* the court addressed such a situation. In that case, a child witness testified at trial. "After she finished testifying, however, the State introduced hearsay testimony from others recounting accusatory statements that [the child] had made to them but to which [the child] had not testified at trial." 109 Nev. at 164, 849 P.2d at 229. The court addressed the problematic aspects of this procedure as follows:

> The defense was unable to cross-examine [the child] on several statements that others claimed she had made. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), requires that cross-examination be "full and effective." *Id.* at 158, 90 S.Ct. at 1935. As a practical matter, if a child is excused before her hearsay statements are proffered, the defense has no opportunity to cross-examine the child on those statements....
>
> . . . . In order to avoid interfering with the defense's opportunity to cross-examine effectively, we construe [the statute] to require that either the State or the court recall a child witness upon the request of the defense, if hearsay statements not firmly rooted in a hearsay exception are introduced subsequent to the child's testimony, and the child-victim did not cover the statements in his or her testimony.

*Id.* at 191–93, 849 P.2d at 247–48.

7. The Supreme Court in *Green* was aware of this potential problem and, accordingly, refused to hold that certain hearsay statements were admissible because of the unresolved issue "[w]hether [the witness]'s apparent lapse of memory so affected [the defendant]'s right to cross-examine as to make a critical difference in the application of the Confrontation Clause[.]" 399 U.S. at 168, 90 S.Ct. at 1940.

Of course, if a witness is unable or unwilling to testify regarding the events that are the subject of the out-of-court statements, the witness is for all practical purposes "unavailable." In that situation, the out-of-court statements may still be admissible under the *Roberts* test, but only if the statements possess adequate indicia of reliability to satisfy the second prong of the *Roberts* test.

8. HRE Rule 403 (1985) provides:

> **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

should not be interpreted in such a manner that the prosecution would be able to prove its case solely on the basis of a child's out-of-court statements without allowing the defendant the opportunity to cross-examine the child during the prosecution's case in chief.[9]

For the foregoing reasons, I agree that when a witness is present, the prosecution should not be allowed to introduce the witness's out-of-court statements until the witness has testified at trial. In the instant case, however, I believe that any error in allowing the prosecution to introduce the videotape prior to the victim's live testimony was harmless.

First, the victim exhibited an independent, albeit imperfect, recollection of the events and was therefore subject to "full and effective" cross-examination. Second, because there were a number of details of the incident that the victim was unable to recall during her live testimony the admission of the videotape evidence was not so cumulative such that "its probative value [was] substantially outweighed by the danger of unfair prejudice." Finally, although the victim did not give any live testimony until she was "cross-examined" by the defense, the record reveals that this "cross-examination" and the subsequent "re-direct" took place during the prosecution's case-in-chief. Therefore, I do not believe that Apilando suffered any prejudice by virtue of the fact that the circuit court allowed the prosecution to introduce the victim's videotaped interview into evidence prior to the victim's live testimony at trial. Accordingly, I dissent.

---

**9.** A number of courts in other jurisdictions have established procedures to protect defendants' rights in this regard. *See, e.g., Felix, supra* (*see supra* note 6); *Holland v. State*, 802 S.W.2d 696, 699–700 (Tex.Crim.App.1991) (holding that if the prosecution proffers an out-of-court statement of a child witness pursuant to statute, and the accused objects on the basis of confrontation and/or due process of law, the prosecution must either "announce its intention to call the child declarant to the stand to allow confrontation without the accused having to call the child to the stand himself" or establish both that the witness is unavailable and that the out-of-court statement is reliable); *Sosebee v. State*, 257 Ga. 298, 299, 357 S.E.2d 562, 563 (1987) (holding that if the prosecution proffers an out-of-court statement of a child witness pursuant to statute, before the prosecution rests, "the court shall, at the request of either party, cause the alleged victim to take the stand[ and] shall then inform the jury that it is the court who has called the child as a witness, and that both parties have the opportunity to examine the child").