**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000067
30-APR-2025
08:06 AM
Dkt. 112 SO**

NO. CAAP-24-0000067

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
STEPHEN BROWN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0001731)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and Guidry, JJ.)

Defendant-Appellant Stephen Brown (**Brown**) appeals from the following judgment and orders entered by the Circuit Court of the First Circuit[1] (**Circuit Court**): (1) the December 6, 2023 Judgment of Conviction and Sentence; (2) the December 12, 2023 Order of Restitution; (3) the December 12, 2023 Order Granting State's Motion for Extended Term Sentencing; and (4) the December 18, 2023 Findings of Fact, Conclusions of Law, and Order Granting State's Amended Motion for Consecutive Term Sentencing. Following a jury trial, Brown was convicted of Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 and 706-656 (Count 1); Kidnapping, in violation of HRS §§ 707-720(1)(c) and/or 707-720(1)(e) (Counts 2[2] and 3); Burglary in the First Degree, in violation of HRS § 708-810(1)(c) (Count 4); and Criminal Property Damage in the Fourth Degree, in

---

[1]     The Honorable Rowena A. Somerville presided.

[2]     On December 6, 2021, the Circuit Court ruled that Counts 1 and 2 merged, based on the jury's findings as to Question 1 of Special Interrogatory No. 2.

violation of HRS § 708-823(1) (Count 7).  As relevant to this appeal, Brown was sentenced as follows:  "an indeterminate term of life imprisonment with the possibility of parole in Count 1, to be served consecutively with Count 3 for twenty (20) years, to be served consecutively with Count 4 for an extended term of twenty (20) years, and consecutively with Count 7 for thirty (30) days with credit for any time served."  (Formatting altered.)

On appeal, Brown contends that:  (1) "[t]he [C]ircuit [C]ourt erred in precluding the defense from presenting Dr. Martin Blinder (**Dr. Blinder**) as an expert witness"; (2) "[t]he [C]ircuit [C]ourt abused its discretion in denying Brown's motion to continue to allow Dr. Blinder to complete his report and to address whether an extreme mental or emotional disturbance defense was applicable"; (3) "[t]he [C]ircuit [C]ourt erred in failing to resolve the jury's inconsistent findings in the extended term hearing and denying Brown's motion for a new trial"; (4) "[t]he prosecutor committed misconduct during his closing argument that deprived Brown of his right to a fair trial"; and (5) "[t]he prosecutor committed misconduct during his closing argument in the extended term sentencing hearing that deprived Brown of his right to a fair trial."

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Brown's contentions as follows, and affirm.

(1) Brown contends that the Circuit Court erred in precluding the defense's proposed testimony of Dr. Blinder. "Generally, the decision whether to admit expert testimony rests in the discretion of the trial court.  To the extent that the trial court's decision is dependant upon interpretation of court rules, . . . such interpretation is a question of law, which [the appellate] court reviews de novo."  Barcai v. Betwee, 98 Hawaiʻi 470, 479, 50 P.3d 946, 955 (2002) (citations omitted).

Hawaiʻi Rules of Evidence (**HRE**) Rule 702 governs the admission of expert testimony.  It states:

2

> If scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

In State v. Fukusaku, 85 Hawaiʻi 462, 946 P.2d 32 (1997), the Hawaiʻi Supreme Court, construing HRE Rule 702, established that "expert testimony must be (1) relevant and (2) reliable." Id. at 473, 946 P.2d at 43 (citing State v. Samonte, 83 Hawaiʻi 507, 533, 928 P.2d 1, 27 (1996); State v. Maelega, 80 Hawaiʻi 172, 181, 907 P.2d 758, 767 (1995)). The court reiterated:

> The critical inquiry with respect to expert testimony is whether such testimony 'will *assist the trier of fact to understand the evidence or determine a fact in issue*.'" HRE Rule 702. Generally, in order to so assist the jury an expert must base his or her testimony upon a sound factual foundation; any inferences or opinions must be the product of an *explicable and reliable system of analysis*; and such opinions must add to the common understanding of the jury." See HRE Rule 703.

Id. (ellipsis and brackets omitted) (quoting Maelega, 80 Hawaiʻi at 181, 907 P.2d at 767).

Brown first contends that the Circuit Court erred in precluding Dr. Blinder's proposed testimony "to explain the nature of Brown and [Defendant-Appellee Hailey Dandurand (**Dandurand**)]'s relationship . . . ." He argues that "Dr. Blinder would have supported the defense theory that Dandurand was the one in control in their relationship and made all the decisions, including causing the death of [Thelma] Boinville on her own."

The record, however, does not establish that Dr. Blinder's proposed testimony regarding the relationship between Brown and Dandurand was "the product of an explicable and reliable system of analysis." Fukusaku, 85 Hawaiʻi at 473, 946 P.2d at 43 (emphasis omitted). The Circuit Court addressed this deficiency, as well as other issues regarding Dr. Blinder's proposed testimony, in the court's December 28, 2022 order limiting his testimony (**Order Limiting Dr. Blinder's Testimony**). The Circuit Court found, and Brown does not dispute, that Dr.

3

Blinder's opinion regarding the relationship dynamic between Brown and Dandurand was based entirely on (a) his two psychiatric examinations of Brown, with Dr. Blinder "rel[ying] solely on . . . Brown's self-reporting and version of the incident[,]" and (b) Dr. Blinder's review of three letters written by the court-appointed examiners of Dandurand.[3/]  Dr. Blinder was not privy to Dandurand's medical records and did not examine her.

On this record, the Circuit Court did not err in concluding that "Dr. Blinder cannot, under the guise of expert testimony, testify as a hearsay conduit to present otherwise inadmissible hearsay to the jury."  See State v. Davis, 53 Haw. 582, 589-590, 499 P.2d 663, 669 (1972).  Further, on this record, the Circuit Court did not err in concluding that "Dr. Blinder is precluded from testifying about [Brown]'s out-of-court, self-serving version of the facts, as there is nothing to guarantee the reliability of the statements, and they are inadmissible hearsay."  In these circumstances, the Circuit Court did not err or otherwise abuse its discretion in precluding Dr. Blinder's proposed testimony regarding the relationship between Brown and Dandurand.

Brown next contends that the Circuit Court erred in precluding Dr. Blinder's proposed testimony that "Brown did not have a predilection for mutilation and murder unlike Dandurand who . . . may be regarded as a sociopath."  The source of this proposed testimony appears to be a December 23, 2022 two-page letter from Dr. Blinder to Brown's counsel, in which Dr. Blinder also stated that he saw "little clinical support for a conventional mental defense."  There is no indication in the letter (or in Brown's opening brief) as to the basis for Dr. Blinder's opinion regarding Brown's lacking "predilection" for murder and Dandurand's alleged sociopathy.  The Circuit Court concluded that Dr. Blinder's proposed testimony, among other things, was not reliable and sought to present inadmissible hearsay to the jury, and amounted to inadmissible testimony about

---

[3/]      Unchallenged findings of fact are binding on appeal.  State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019).

Brown's credibility.  On this record, particularly given the absence of any stated basis for Dr. Blinder's opinion, we cannot say that the Circuit Court erred or otherwise abused its discretion in precluding his proposed conclusory testimony comparing Brown and Dandurand's relative "predilections."

(2)  Brown contends that the Circuit Court erred in denying his motion for a trial continuance in order to allow Dr. Blinder to complete his report.  Brown argues that "[his] defense was severely prejudiced because [he] did not have adequate time to prepare, as . . . Dr. Blinder[] informed defense counsel and the circuit court in his supplemental two-page letter that his evaluation, especially to the questions that defense counsel had requested him to explore and evaluate, was a 'work in progress.'"

"A motion for continuance is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion."  State v. Lee, 9 Haw. App. 600, 603, 856 P.2d 1279, 1281 (1993) (citing State v. Gager, 45 Haw. 478, 488, 370 P.2d 739, 745 (1962)).  In evaluating whether a motion for continuance should have been granted, the relevant factors are: "(1) whether counsel below exercised due diligence in seeking to obtain the [evidence or] witness; and (2) whether the [evidence or] witness provides relevant and material testimony that benefits the defendant."  State v. Williander, 142 Hawaiʻi 155, 163-64, 415 P.3d 897, 905-06 (2018); see also State v. Villiarimo, 132 Hawaiʻi 209, 223, 320 P.3d 874, 888 (2014) (Nakayama, J., concurring) (explaining that the Hawaiʻi Supreme Court has used due diligence and materiality factors to determine whether the trial court abused its discretion in denying a motion to continue to obtain testimony of a witness).

As to the first Williander factor, the Order Limiting Dr. Blinder's Testimony sets forth the relevant procedural history, including the following:  (1) on January 11, 2022, the court appointed Brown's trial counsel; (2) the court subsequently granted Brown's multiple requests for continuances; (3) on September 26, 2022, the court approved litigation expenses for Dr. Blinder; (4) on December 7, 2022, following Brown's request

5

for a fourth trial continuance, the court ordered that Dr. Blinder complete his report by December 14, 2022, and later extended the deadline, at Brown's request, to December 16, 2022; (5) on December 21, 2022, (a) defense counsel sent an email to the court indicating that Dr. Blinder had not completed his final report and it was "still a work in progress," (b) during a later telephone status conference, the court ordered Dr. Blinder to provide the full report by December 23, 2022, (c) shortly after the status conference, defense counsel forwarded Dr. Blinder's December 15, 2022 report to the court, and (d) after receiving and reviewing the report, the court indicated that it considered the report final; (6) on December 23, 2022, Brown's counsel informed the parties via email that he had received a two-page letter from Dr. Blinder "explaining, among other things, that his evaluation 'is very much a work in progress'"; and (7) on December 27, 2022, a week before the scheduled start of trial, Brown filed a motion to continue the trial. None of this history is disputed. See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435. Brown's motion to continue was based on Dr. Blinder's December 23, 2022 letter describing his report as a "work in progress," and defense counsel's further statement that, "[w]hile Dr. Blinder has answered some of counsel's questions, he also appears to have neglected to address all issues such as whether there is a[n] Extreme Mental or Emotional Disturbance Defense."[4/] Brown failed to show, however, what efforts he made, i.e., that he exercised due diligence, in seeking to obtain Dr. Blinder's final report, such that he could testify at trial.

As to the second Williander factor, Brown appears to have made no proffer as to the relevance and materiality of any anticipated later opinion or proposed testimony of Dr. Blinder. Indeed, on December 20, 2022, defense counsel informed the State via email that he did not expect to call Dr. Blinder "to support

---

[4/] In fact, Dr. Blinder's December 23, 2022 letter stated in relevant part: "I see little clinical support for a conventional mental defense. Of course this could all change right up to the day of trial as I continue to work on and think about the complexity in this matter. I have already changed my mind twice and might do so again."

a mental defense, 'diminished capacity', or extreme mental or emotional disturbance defense." Moreover, at Brown's extended term sentencing hearing, Dr. Blinder definitively testified that he "concluded that there was no mental defense." On this record, Brown has failed to show the relevance and materiality of any anticipated later opinion or proposed testimony of Dr. Blinder.

Without a proffer as to the efforts made by Brown to obtain Dr. Blinder's final report and the materiality of Dr. Blinder's anticipated testimony, we cannot say the Circuit Court abused its discretion in denying Brown's motion to continue the trial.

(3) Brown contends that "[a] new trial on the extended term sentencing should have been granted 'in the interest of justice,' . . . as the jury's verdicts/findings clearly reflected a 'misunderstanding of the charge of the court on the part of the jury.'" In particular, Brown argues that "the jury's findings on whether the prosecution proved beyond a reasonable doubt that it was necessary for the protection of the public to extend Brown's sentences were inconsistent."

The Hawaiʻi Supreme Court has made clear that "courts should attempt to first reconcile seemingly-inconsistent verdicts before vacatur." State v. Perry, 153 Hawaiʻi 185, 189, 528 P.3d 524, 528 (2023) (quoting State v. Bringas, 149 Hawaiʻi 435, 443, 494 P.3d 1168, 1176 (2021)).

> [I]f there's 'a reasonable way to reconcile' a jury's findings, then a conviction stands. Bringas, 149 Hawaiʻi at 443, 494 P.3d at 1176 (explaining "the requirement that an appellate court search for any reasonable way to reconcile a jury's verdicts serves to avoid speculation into the jury's confidential deliberations and to safeguard the result of those deliberations, if at all possible.")

Id. (original brackets omitted); see Bringas, 149 Hawaiʻi at 442, 494 P.3d at 1175 ("[T]he court must first 'search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort' before it vacates the jury's verdict and remands the case for a new trial." (quoting Carr v. Strode, 79 Hawaiʻi 475, 489, 904 P.2d 489, 503 (1995))).

At the extended term sentencing hearing, the jury found that the State had proved beyond a reasonable doubt that Brown was a multiple offender in that he was being sentenced for two or more felonies. As to whether the State had proved beyond a reasonable doubt that it was necessary for the protection of the public to extend Brown's sentences, the jury answered "yes" with respect to Counts 1, 2, and 4, and "no" with respect to Count 3. Count 3 was the offense of kidnapping the minor child (**MBE**).

Based on these findings, on February 3, 2023, Brown filed a motion for directed decision regarding extended term sentencing, or motion for new trial (**Motion for New Trial**). Following briefing and a hearing, the Circuit Court denied the motion. The court's April 5, 2023 "Findings of Fact, Conclusions of Law, and Order Denying [Brown's Motion for New Trial]" explained the court's reasoning in part as follows:

CONCLUSIONS OF LAW

. . . .

. . . .

12. There are reasonable ways to read the jury's findings as expressing a coherent view of the case. The jury's findings as to each count reflect a careful and independent consideration as to the need of an extended term of imprisonment for the protection of the public as to that count.

13. There is nothing irreconcilable about the jury's factual findings. Without question, there was an evidentiary basis for the jury to make a 'necessary for the protection of the public' finding as to counts 1, 2, and 4. There is also a factual basis for the jury to decline to make the same finding as to count 3.

14. The same facts do not apply to each count. The absence of physical injury to [MBE], coupled with defense counsel's emphasis on this point, provide a factual explanation for why the jury found as it did. There is nothing irreconcilable about this finding that demands a new extended term sentencing hearing.

During the March 1, 2023 hearing of the motion, the court further observed that "[the jury] obviously found, and as [defense counsel] himself argued, that . . . Brown did not physically harm [MBE] in the way that Ms. Boinville was harmed."

We conclude that the Circuit Court's analysis is a "reasonable way to read the [jury's findings] as expressing a coherent view of the case" and the extended term sentencing proceeding. Bringas, 149 Hawaiʻi at 442, 494 P.3d at 1175 (quoting Carr, 79 Hawaiʻi at 489, 904 P.2d at 503). The Circuit Court did not abuse its discretion in denying the Motion for New Trial.

(4) Brown contends that the deputy prosecuting attorney (**DPA**) committed misconduct when he "offered his personal opinion as to MBE's credibility during his closing argument[.]" Specifically, Brown challenges the following statements made by the DPA:

> First, the defendant admitted to [MBE] that he and Hailey Dandurand killed her mother. [MBE] testified last week that when the boy with the green hair scooped her out of the back of the car, he told her, "We killed your mom." In evaluating [MBE]'s testimony, consider her age and experience, her candor and appearance on the witness stand, the manner she was able to answer the questions, the vocabulary that she used, and an objective assessment of her leads you to the only conclusion; that she is credible.

> How do you know? During the investigation of this case she told her father that it was a boy with green hair and a girl with pink hair who were responsible. Eventually her father [KE] received this social media post on his cell phone which he in turn showed to [MBE]. She was asked during her examination last week, "How sure are you that the boy and girl in that picture are the same boy and girl who tied you up?" "One hundred percent" was her answer.

> The reason why it was one hundred percent is because she is the only one who has firsthand knowledge of what happened to her. And she testified credibly based on her age, her experience, the manner in which she presented herself, her candor, her vocabulary she used.

Although Brown did not object during trial to any of these statements, in prosecutorial misconduct cases, "there is no difference between the plain error and harmless beyond a reasonable doubt standards of review." State v. Hirata, 152 Hawaiʻi 27, 31, 520 P.3d 225, 229 (2022) (citing State v. Riveira, 149 Hawaiʻi 427, 431 n.10, 494 P.3d 1160, 1164 n.10 (2021)). "[O]nce the defense establishes misconduct - objection or no objection - appellate review is the same: 'After considering the nature of the prosecuting attorney's conduct, promptness or lack of a curative instruction, and strength or

weakness of the evidence against the defendant, a reviewing court will vacate a conviction if there is a reasonable possibility that the conduct might have affected the trial's outcome.'" <u>Id.</u> (quoting <u>Riveira</u>, 149 Hawaiʻi at 431, 494 P.3d at 1164).

We conclude that the challenged statements by the DPA did not constitute prosecutorial misconduct. Viewed in context, the DPA's remarks did not express a personal opinion about MBE's credibility. Rather, the DPA explained the factors that the jury may consider when evaluating a witness's credibility and cited specific evidence relevant to one or more of those factors that supported the DPA's assertion about MBE's credibility. Brown's contention is without merit.

(5) Brown contends that the DPA committed prosecutorial misconduct during the extended term sentencing hearing by referring to the jury as "the voice of the public" and "the voice of the community[.]" Specifically, Brown challenges the underlined portions of the following two statements made by the DPA during his closing argument:

Statement 1

So what is this proceeding all about? It is for you, <u>as the voice of the public</u>, to make this decision. Is it necessary for the protection of the public to extend defendant Stephen Brown's sentence in Count 1 from a possible life sentence to a definite life sentence of imprisonment? That's what this proceeding is all about.

Statement 2

On more than one occasion Dr. Blinder said that he didn't have a crystal ball and could not, with complete assurance, opine whether Mr. Brown will ever reoffend. That's true. No one has that crystal ball. But you are empowered to make a decision today that will ensure the protection of the public. And that's your responsibility.

The prosecution calls upon you to reject Dr. Blinder's paradox, regardless of how enticing it may seem. He said that the paradox is that statistics of which he is aware confirm that people who commit the most grievous crimes are unlikely to reoffend, while those who commit rather low-level crimes, such as the shoplifting example that he gave, are much more likely to reoffend. You need not accept this paradox as the reason for your decision. <u>Yours is the voice of the community</u> in this case.

(Emphases added.)

10

Although Brown did not object to the first statement, he did object to the underlined portion of the second statement during the hearing. The Circuit Court sustained the objection and instructed the jury to "disregard the prosecutor's last statement. You are not to consider it in your deliberations." The Circuit Court later denied Brown's Motion for a New Trial based on the "voice of the community" statement, ruling that the jury is presumed to have followed the court's instruction to disregard it, after which "the State never returned to this line of argument."

Relying on State v. Apilando, 79 Hawaiʻi 128, 900 P.2d 135 (1995), Brown argues that the DPA's references to "the voice of the public" and "the voice of the community" "diverted the jury from its duty to decide the case on the evidence, by injecting issues broader than determining whether an extended term was appropriate." (Brackets omitted.) In Apilando, the prosecutor asked the jury to "send a message to the defendant that his actions were wrong, they're not to be tolerated by this community. You have an authority to do that, ladies and gentlemen, and I'm asking you to find him guilty." Id. at 142, 900 P.2d 149 (brackets omitted.) The supreme court held that "the prosecutor's plea that the jury send a message to the defendant that his conduct would not be tolerated by the community was improper." Id. The court stated that "[i]t is true that the jury represents the community," but as to the improper "plea," there was "a significant risk that the jury might find the defendant guilty simply based on its view that the conduct the defendant is accused of committing is intolerable, even though it has not been proved beyond a reasonable doubt or otherwise fails to support a conviction of the charged offense." Id.

In contrast, here, the DPA did not urge the jury to "send a message" to Brown or to determine the relevant sentencing issues without regard to the evidence or the State's burden of proof. In the first challenged statement, the DPA sought to explain "what . . . this proceeding [is] all about" and to focus the jury on the issue of whether an extended sentence on Count 1

was "necessary for the protection of the public." The second challenged statement followed the DPA's detailed assessment of Dr. Blinder's testimony, including on whether Brown was likely to re-offend, in relation to whether "an extended term is necessary for the protection of the public." The DPA reminded the jury that "Dr. Blinder said that he didn't have a crystal ball and could not, with complete assurance, opine whether Mr. Brown will ever reoffend." The DPA continued: "No one has a crystal ball. But you are empowered to make a decision today that will ensure the protection of the public." It was in this context that the DPA urged the jury, as "the voice of the community," to reject Dr. Blinder's recidivism "paradox." It was an argument urging a common-sense view of evidence that a juror *could* consider speculative.

In any event, we conclude there is no reasonable possibility that the "voice of the community" statement might have affected the outcome of the hearing. See Hirata, 152 Hawaiʻi at 33, 520 P.3d at 231 (quoting Riveira, 149 Hawaiʻi at 431, 494 P.3d at 1164). First, as discussed above, the statement did not ask the jury to determine the relevant sentencing issues without regard to the evidence or the State's burden of proof. Additionally, after Brown's objection was sustained, the State did not return to the "voice of the community" language. Second, the Circuit Court gave a prompt curative instruction telling the jury to disregard the remark and not to consider it in deliberations. The jury is presumed to have followed this instruction. See State v. Acker, 133 Hawaiʻi 253, 278, 327 P.3d 931, 956 (2014). Third, having reviewed the entire record, we conclude that strong evidence supported the jury's findings regarding extended term sentencing, *i.e.*, (1) Brown was a multiple offender in that he was being sentenced for two or more felonies, and (2) it was necessary for the protection of the public to extend Brown's sentences as to Counts 1, 2, and 4. Brown's final contention is therefore without merit.

For the reasons discussed above, we affirm the following, entered by the Circuit Court of the First Circuit: (1) the December 6, 2023 Judgment of Conviction and Sentence; (2)

the December 12, 2023 Order of Restitution; (3) the December 12, 2023 Order Granting State's Motion for Extended Term Sentencing; and (4) the December 18, 2023 Findings of Fact, Conclusions of Law, and Order Granting State's Amended Motion for Consecutive Term Sentencing.

DATED:  Honolulu, Hawaiʻi, April 30, 2025.


On the briefs:

James S. Tabe
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Kimberly T. Guidry
Associate Judge